**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| FORD MOTOR CREDIT COMPANY | : | |
| | : | |
| -vs- | : | C.A. NO. 05-137S |
| | : | |
| RHODE ISLAND MACK SALES & SERVICE, INC. | : | |

**DEFENDANT'S MOTION TO COMPEL MORE**
**RESPONSIVE ANSWERS TO INTERROGATORIES**

Defendant Rhode Island Mack Sales & Service, Inc. (hereinafter referred to as "RI Mack") hereby moves pursuant to Rule 37(a)(2) of the Federal Rules of Civil Procedure for an Order compelling plaintiff Ford Motor Credit Company (hereinafter referred to as "FMCC") to provide more responsive answers to the following interrogatories.

**Interrogatory 5:** For each of the following vehicles (hereinafter jointly referred to as "the vehicles"):

| | Serial Number | Year | Make |
|---|---|---|---|
| a) | KMFHB47AXYC115030 | 2000 | GVWR CAB |
| b) | KMFHB47A2YC111828 | 2000 | GVWR CAB |
| c) | KMFLB69B2YC004063 | 2000 | MD GVWR |
| d) | KMFLB69B2YC004080 | 2000 | GVWR CAB |
| e) | KMFPB69B0YC005259 | 2000 | GVWR CAB |
| f) | KMFPB69B6YC005251 | 2000 | GVWR CAB |
| g) | KMFVC88D3YC003248 | 2000 | BERNG TRK |
| h) | KMFVC88D3YC003251 | 2000 | BERNG TRK |
| i) | KMFVC88D5YC003252 | 2000 | BERNG TRK |
| j) | KMFVC88D9YC003254 | 2000 | BERNG TRK |
| k) | KMFLB69B6YC004065 | 2000 | MD GVWR |

state:

a) the invoice, contract or other advise received from Bering which FMCC relied upon in charging RI Mack's floor plan for each such vehicle;

b) the date each such invoice, contract or other advise was received;

c) the date the vehicle was charged to RI Mack's floor plan;

d) the date a promissory note and/or security agreement was executed;

e) the name and address of the person who executed the promissory note and/or security agreement.

**Answer:** a) Pursuant to drafting instructions from Bering, Bering notified FMCC electronically that it had sold vehicles to R.I. Mack under R.I. Mack's floor plan.

b) FMCC does not have records of the exact day it received notice of each such vehicle. The approximate date is indicated by the first monthly register on which each vehicle appears.

c) Upon receipt of electronic notification each vehicle was immediately charged to R.I. Mack's floor plan.

d) Pursuant to the power of attorney that R.I. Mack gave to FMCC in the floor plan agreement, a promissory note and security agreement for each vehicle was executed at about the time Bering reported to FMCC that it had sold the vehicle to R.I. Mack. Those notes and security agreements were delivered to Bering as part of the weekly transaction registers. The vehicle was placed on Bering's "floor plan" with financing under the floor plan agreement. The

wholesale agreement includes a security provision.

e) See answer to (d) above.

**Argument: FMCC should be required to respond to subparagraph b by providing a date each vehicle was charged to RI Mack's floor plan.**

**Interrogatory 6:** List by date and amount all payments which FMCC received from Bering at any time for credit to RI Mack's Automatic Wholesale Plan ("the floor plan").

**Answer:** Bering paid the first sixty-days of interest that each vehicle was on R.I. Mack's Automotive Wholesale Plan. FMCC is not making any claim for that interest.

**Argument: FMCC has not listed by date and amount all payments which Bering made to it for credit to RI Mack's Automotive Wholesale Plan.**

**Interrogatory 7:** Identify the officers and directors of FMCC during the period 1998 to 2002, including their present or last known address.

**Answer:** None of the officers or directors of FMCC during the period 1998 to 2002 were officers, directors or employees of Bering.

**Argument: Plaintiff has not responded to this interrogatory by identifying the names and addresses of its officers from 1998 through 2002.**

**Interrogatory 14:** State the total amount which Bering owed FMCC as of June 1, 2001; provide a breakdown of the basis for such debt, and describe with specificity the security which FMCC held for such debt.

**Answer:** See objection.

**Objection:** FMCC objects to this interrogatory on the grounds that RI Mack terminated its dealership agreement with Bering in March 2001 and the amount Bering owed to FMCC on June 1, 2001 has no relevance to the claims and defenses set forth in this lawsuit nor will that information lead to the discovery of admissible evidence.

**Argument: FMCC should be required to answer this question as it is relevant to the extent of its control of Bering.**

**Interrogatory 15:** As to each secured asset identified above, state the date upon which FMCC took possession of such asset, including but not limited to, Bering's property, inventory, accounts receivables, contracts and other intangible property.

**Answer:** See objection.

**Objection:** FMCC objects to this interrogatory on the grounds that RI Mack terminated its dealership agreement with Bering in March 2001 and the assets that secured Bering's debt to FMCC on June 1, 2001 have no relevance to the claims and defenses set forth in this lawsuit nor will that information lead to the discovery

of admissible evidence.

__Argument__: **FMCC should be required to answer this question as it is relevant to the extent of its control of Bering.**

**Interrogatory 19:** List all amounts received from the disposition of Bering assets, the source of such funds, and the current balance due FMCC from Bering.

**Answer:** See objection.

**Objection:** Subject to that objection, with respect to the 11 vehicles that are the subject of this lawsuit, see the attached "Disposition of Wholesale Inventory Control Log."

__Argument__: **FMCC did not attach the "Disposition of Wholesale Inventory Control Log" to its answer.**

**Interrogatory 20:** State whether FMCC has filed legal proceedings against any other party involved with Bering, including but not limited to:

a) list all actions filed against Bering dealers based upon FMCC floor plan financing agreements and describe the current status of each such proceeding;

b) list all actions filed against Hyundai Motors or Daimler Chrysler for the termination of their contract with Bering;

c) list any other legal proceeding filed since June 2001 which arose out of FMCC's relationship with Bering or its dealers.

**Answer:** a) In addition to Rhode Island Mack, FMCC has filed suit against

U.S. Leasing, August Schmidt, Midwest Diesel, Hickory International, Truck Sales of America, International Truck, Marotta's Truck, Ballard Mack, Southland, Diversified, Daigle & Houghton, Robert B. Hoover, Bernie Enterprises. These claims settled: Southerland, Hickory International, August Schmidt, Midwest Diesel, Truck Sales of America, Robert B. Hoover, Marotta's Truck, Bernie Enterprises and Daigle & Houghton. Other disputes settled without litigation.

b) None, to FMCC's knowledge.

c) None, to FMCC's knowledge. All legal proceeding filed since June 2001 arose from the dealers' failure to repay FMCC.

**Argument**: **FMCC has failed to answer subparagraph (a) by describing the current status of the lawsuits which have not been settled.**

**Interrogatory 22:** Identify by name and address each Bering dealer for whom FMCC provided floor plan financing as of June 1, 2001, and as to each such dealer state:

a) The total amount owed to FMCC;

b) Whether litigation was instituted to collect such balance due;

c) The case caption and name and address of the attorney representing such dealer in the litigation.

**Answer:** See response to No. 20.

**Argument**: **FMCC has failed to respond to this interrogatory.**

**Interrogatory 25:** Describe with specificity all steps which FMCC took to obtain possession from RI Mack of the Bering trucks financed by FMCC, including the dates of all such actions, and as to each of the vehicles, state:

(1) The date on which FMCC advised RI Mack that it intended to sell such vehicle at public or private sale;

(2) The name and address of all parties who submitted bids, the amount of each such bid, and the date on which such vehicle was sold or otherwise disposed of.

**Answer:** (1) FMCC contracted with Jim Byrne to sell repossessed Bering vehicles at private sales. The sale of these vehicles was advertised on FMCC's website and by flyers and email to many dealers. R.I. Mack was aware of the website because it had previously purchased vehicles off the website.

(2) FMCC does not have information on all parties who submitted bids or the amounts of their bids. It accepted the highest offer for each vehicle. See answer to Interrogatory No. 19.

**Argument: FMCC has not filed a responsive answer to this interrogatory.**

**Interrogatory 27:** List each and every document which FMCC relies upon in asserting that the vehicles were disposed of in a commercially reasonable manner.

**Answer:** See, attached printout record values and dispositions of numerous Bering vehicles repossessed and sold by FM

CC from 2001-onward.

**Argument: FMCC did not attach printout record values and dispositions to its answers to interrogatories.**

JAMES H. REILLY #0658
KELLY, KELLEHER, REILLY &
SIMPSON
Attorney for Defendant
146 Westminster Street, Suite 500
Providence, Rhode Island 02903
(401) 272-1312
(401) 331-9397 (fax)

To: Thomas W. Lyons, Esquire
Strauss, Factor, Laing & Lyons
222 Richmond Street, Suite 208
Providence, Rhode Island 02903

CERTIFICATION

I hereby certify that I mailed a copy of the within Motion to Compel to the above counsel of record on February 22, 2005.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| FORD MOTOR CREDIT COMPANY | : | |
| | : | |
| -vs- | : | C.A. NO. 05-137S |
| | : | |
| RHODE ISLAND MACK SALES & SERVICE, INC. | : | |

**DEFENDANT RHODE ISLAND MACK SALES & SERVICE, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND MOTION TO COMPEL MORE RESPONSIVE ANSWERS TO INTERROGATORIES**

**Background**

Plaintiff Ford Motor Credit Company's (hereinafter "FMCC") Complaint seeks recovery against defendant Rhode Island Mack Sales & Service, Inc. (hereinafter "RI Mack") for amounts allegedly due for "floor plan financing" which FMCC provided to RI Mack for trucks which RI Mack purchased new from Bering Truck Corp., Bering Truck Distributors, LLC and its affiliates (hereinafter jointly referred to as "Bering"). At all relevant times, FMCC was Bering's primary lender and secured party. As such, FMCC had full knowledge of Bering's financing arrangements with its distributors such as RI Mack. At all times, FMCC was aware of Bering's financial condition and ability to comply with the terms and conditions of its Dealership Agreement with RI Mack.

RI Mack had entered into such a Dealership Agreement with Bering on April 7, 1999, to act as a Bering truck distributor. On April 21, 1999, RI Mack executed an Automotive Wholesale Plan with FMCC to provide "floor plan financing" for the

vehicles it would be acquiring from Bering.

As part of its solicitation of dealers, Bering represented that floor plan financing would be available through FMCC. Neither Bering nor FMCC advised RI Mack or other dealers of their secured creditor-debtor relationship. In soliciting new dealers and to encourage dealers to stock Bering vehicles, Bering offered an "Initial Stock Order Program" which provided one full year of free financing on all floor-planned vehicles that were ordered by RI Mack and other dealers to satisfy the initial inventory level required by Bering. (See Affidavit of Richard Riley Frisbee attached hereto as Exhibit A). Bering represented that it would make all such interest payments directly to FMCC. All of the foregoing representations were made orally by Bering to RI Mack and were known and authorized to by FMCC.

After becoming an authorized dealer, Bering requested RI Mack to, at no cost, take consignment, store and display four HD 67 cement mixers. Due to their small size and design, RI Mack knew that these cement mixers were not attractive to the marketplace. RI Mack never authorized the vehicles being charged to its floor plan. It took possession of the vehicles solely as an accommodation to Bering. FMCC was aware and approved of this so-called "Mixer Program" (see Exhibit A, Affidavit of Richard Riley Frisbee).

Acting pursuant to Article 11.6 of the Bering Dealership Agreement, RI Mack notified Bering on March 22, 2001, that it was terminating its dealership agreement. On May 11, 2001, Bering acknowledged receipt of the termination

letter and advised RI Mack that it would forward instructions regarding the return of its inventory of trucks. At the time of the termination, RI Mack had eleven (11) Bering vehicles in its possession which included the four HD67 cement mixers which were being stored on its property as a courtesy to Bering. Neither Bering nor FMCC took any action to take possession of the vehicles in RI Mack's possession.

In June, 2001, Bering suspended all of its operations due to a dispute with Hyundai Motor Co. ("Hyundai"), with which it had an agreement to be the exclusive United States commercial truck distributor for Hyundai, a Korean company. Upon learning that Bering was going out of business, RI Mack notified Bering, FMCC and Hyundai and requested that they take possession of the Bering vehicles. However, FMCC did not attempt to retrieve the vehicles until April, 2002. As the primary secured creditor, FMCC acquired all of Bering's assets and was in control of the company's liquidation after it went out of business.

RI Mack alleges that FMCC in effect had control over Bering's operation and was the "alter ego" or "successor in interest" to Bering. Bering breached its agreement that RI Mack would have no financial obligations for the four cement mixers. Furthermore, in March 2001 (3 months before Bering went out of business), RI Mack notified Bering it was terminating its dealership agreement. Bering breached its obligation to take immediate possession of the vehicles and indemnify RI Mack from any financial liability to FMCC. RI Mack alleges that FMCC had full knowledge of its dealership termination and directed, encouraged or

approved of Bering's inaction knowing that Bering would shortly be going out of business. By not taking possession of the vehicles, FMCC preserved its claim against RI Mack, rather than receiving the vehicles as part of Bering's "Voluntary Surrender" of its assets.

**Travel of the Case**

RI Mack filed an Answer to FMCC's Complaint on or about April 22, 2005 and pled the Affirmative Defenses of fraud, laches, waiver and plaintiff's failure to dispose of collateral in a commercially reasonable manner.

On June 23, 2005, RI Mack submitted its Settlement Conference Statement. As a result of a Settlement Conference held on June 27, 2005, a Pretrial Order was entered providing for a Discovery Closure Date of January 17, 2006. On August 26, 2005, RI Mack propounded Interrogatories to FMCC and a Request for Production of Documents. On or about September 29, 2005, the parties filed an Enlargement Stipulation allowing FMCC until October 6, 2005 to respond to RI Mack's discovery. On December 30, 2005, RI Mack provided its Answers to Interrogatories and Document Production to FMCC. On January 25, 2006, the Court granted the parties Joint Motion to extend the discovery closure date an additional ninety days. On January 13, 2006, FMCC responded to Plaintiff's Request for Production of Documents.

**Argument**

Plaintiff's Discovery Responses are unresponsive, incomplete, evasive and

not made in good faith. For the most part, FMCC has merely copied records previously produced by RI Mack in this litigation. The only new documents produced by FMCC are noted in RI Mack's Motion to Compel Production of Documents and Motion to Compel More Responsive Answers to Interrogatories submitted herewith.

JAMES H. REILLY #0658
KELLY, KELLEHER, REILLY & SIMPSON
Attorney for Defendant
146 Westminster Street, Suite 500
Providence, Rhode Island 02903
(401) 272-1312
(401) 331-9397 (fax)

To: Thomas W. Lyons, Esquire
Strauss, Factor, Laing & Lyons
222 Richmond Street, Suite 208
Providence, Rhode Island 02903

CERTIFICATION

I hereby certify that I mailed a copy of the within Memorandum and Motion to the above counsel of record on February 22, 2006.