**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| FORD MOTOR CREDIT COMPANY | : | |
| | : | |
| -vs- | : | C.A. NO. 05-137S |
| | : | |
| RHODE ISLAND MACK SALES & SERVICE, INC. | : | |
| | : | |

**DEFENDANT'S MOTION TO COMPEL PRODUCTION**
**ADDRESSED TO PLAINTIFF FORD MOTOR CREDIT COMPANY**

Defendant hereby moves for an Order compelling plaintiff to produce true and accurate copies of the following documents pursuant to Rule 37(a)(2) of the Federal Rules of Civil Procedure:

1. **Request:** All records referring or relating to financing of vehicles purchased by Rhode Island Mack Sales & Service, Inc. (hereinafter referred to as "RI Mack") from Bering Truck Corp. and/or Bering Truck Distributors, LLC, (hereinafter jointly referred to as "Bering") from 1998 to 2002.

**Plaintiff's Objection**: "Plaintiff objects to this request on the grounds it is overbroad, burdensome and seeks documents not likely to lead to the discovery of admissible evidence. This case concerns only 11 vehicles purchased by defendant and financed by plaintiff."

**Plaintiff's Response:** "Subject to FMCC's objection, see response attached."

**Argument: The only "new" documents produced by plaintiff are attached as**

**Exhibit 1. All other documents were previously produced by RI Mack. Plaintiff should be compelled to produce written communications between FMCC employees and the Bering employees identified in plaintiff's Answer to Interrogatory No. 1. These include Steven Richter, Harry Saxton, Guy Basden and Jim Byrne.**

**2. Request:** Copies of all contracts, security agreements, promissory notes, mortgages or other agreements entered into between plaintiff Ford Motor Credit Company (hereinafter referred to as "FMCC") and Bering.

**Plaintiff's Response:** "Plaintiff objects to this request on the grounds it is overbroad, burdensome and seeks documents not likely to lead to the discovery of admissible evidence. Without waiving said objection, see answer to Interrogatory #11."

**Argument: In Answer to Interrogatory #11 , FMCC indicates that in 1999 it entered into a Capital Loan Agreement, Revolving Loan Agreement and a Construction Loan Agreement with Bering. All of these documents are relevant to show the extent of FMCC's control of Bering and knowledge of its dealings with RI Mack. In addition, FMCC should be compelled to produce all documents relating to Bering's 2001 "Voluntary Surrender" of its assets to FMCC.**

**3. Request:** All correspondence between defendant and plaintiff.

**Plaintiff's Objection:** "Plaintiff objects to this request on the grounds it is

overbroad, burdensome and seeks documents not likely to lead to the discovery of admissible evidence. This case concerns only 11 vehicles purchased by defendant and financed by plaintiff."

**Plaintiff's Response:** "Subject to FMCC's objection, see response attached."

**Argument: FMCC has merely copied documents previously produced by RI Mack. In Answers to Interrogatory #2, it identified Beth Irwin Nuttel and Sara O'Brien as employees who had oral and written communications with RI Mack. Plaintiff should be compelled to produce all such documents, notes or other written memoranda.**

4. **Request:** All correspondence between FMCC and Bering.

**Plaintiff's Objection:** "Plaintiff objects to this request on the grounds it is overbroad, burdensome and seeks documents not likely to lead to the discovery of admissible evidence. This case concerns only 11 vehicles purchased by defendant and financed by plaintiff."

**Plaintiff's Response:** "Subject to FMCC's objection, none."

**Argument: FMCC should be ordered to produce all documents which relate to Bering's "Initial Stock Order Program" and Bering's "Mixer Program" as identified in the Affidavit of Richard Riley Frisbee attached as Exhibit 4.**

5. **Request:** All e-mails between FMCC and Bering from January 1, 2000 to the present.

**Plaintiff's Objection:** "Plaintiff objects to this request on the grounds it is overbroad, burdensome and seeks documents not likely to lead to the discovery of admissible evidence. This case concerns only 11 vehicles purchased by defendant and financed by plaintiff. Moreover, defendant terminated its Bering dealership in March 2001."

**Plaintiff's Response:** "Subject to FMCC's objection, none."

**Argument:** **FMCC should be ordered to produce all e-mails which relate to Bering's "Initial Stock Order Program" and Bering's "Mixer Program" as identified in the attached Affidavit of Richard Riley Frisbee and Bering's "Voluntary Surrender" of its assets to FMCC.**

**Request 6:** Copies of the "invoices, contracts or other advise" received from Bering which FMCC relied upon in charging RI Mack floor plan for each such vehicle.

**Plaintiff's Objection:** "Plaintiff objects to this request on the grounds it is overbroad, burdensome and seeks documents not likely to lead to the discovery of admissible evidence. This case concerns only 11 vehicles purchased by defendant and financed by plaintiff."

**Plaintiff's Response:** "Subject to FMCC's objections, see response attached."

**Argument:** **Plaintiff has produced "Monthly Activity Registers" from July 1999 through October 2000 and the months of May 2001 and August 2001. FMCC should be compelled to produce the missing monthly registers. In answer to interrogatory #5, FMCC has stated that it was notified electronically by Bering when it had sold a vehicle to RI Mack under RI Mack's floor plan. FMCC should produce documentation of such electronic notification which it received from Bering for each of the 11 vehicles which are the subject of this claim.**

**8. Request:** Records of all payments which FMCC received from Bering at any time for credit to RI Mack's Automatic Wholesale Plan ("the floor plan").

**Plaintiff's Objection:** "Plaintiff objects to this request on the grounds it is overbroad, burdensome and seeks documents not likely to lead to the discovery of admissible evidence. This case concerns only 11 vehicles purchased by defendant and financed by plaintiff. Bering made payments to FMCC for the first sixty days of interest on individual vehicles. Bering made no other payments to FMCC for credit to RI Mack's floor plan. FMCC is not making any claim for that interest."

**Plaintiff's Response:** "See objection."

**Argument:** **RI Mack contends that Bering agreed to pay the first year's financing of its initial floor plan and all amounts due on cement mixers consigned to**

**RI Mack. Records of such payments by Bering are therefore relevant to RI Mack's defense of this action.**

**10. Request:** All records relating to FMCC's operation of Bering Financial Services.

**Plaintiff's Objection:** "Plaintiff objects to this request on the grounds it is overbroad, burdensome and seeks documents not likely to lead to the discovery of admissible evidence. This case concerns only 11 vehicles purchased by defendant and financed by plaintiff."

**Plaintiff's Response:** "See objection."

**Argument: In answer to interrogatory #13, FMCC has admitted that from 1999 to 2001, it did business as "Bering Financial Services". The requested information is relevant to show that FMCC was Bering's alter ego and had substantial control of Bering's operations.**

**11. Request:** Records showing the total amount which Bering owed FMCC as of June 1, 2001.

**Plaintiff's Objection:** "Plaintiff objects to this request on the grounds it is overbroad, burdensome and seeks documents not likely to lead to the discovery of admissible evidence. This case concerns only 11 vehicles purchased by defendant and financed by plaintiff. Moreover, RI Mack cancelled its dealership agreement

with Bering in March 2001."

**Plaintiff's Response:** "See objection."

**Argument**: **FMCC should be required to produce copies of all of Bering's audited financial statements which it certainly received as Bering's secured creditor. FMCC should be required to produce all documents detailing the amounts owed by Bering when it went out of business in June, 2001.**

**12. Request:** Copies of all documents which show the date upon which FMCC took possession of Bering's assets, including but not limited to, Bering's property, inventory, accounts receivables, contracts and other intangible property.

**Plaintiff's Objection:** "Plaintiff objects to this request on the grounds it is overbroad, burdensome and seeks documents not likely to lead to the discovery of admissible evidence. This case concerns only 11 vehicles purchased by defendant and financed by plaintiff. Moreover, RI Mack cancelled its dealership agreement with Bering in March 2001 and FMCC took possession of Bering's second assets in June 2001."

**Plaintiff's Response:** "See objection."

**Argument**: **The requested documents will show the extent of FMCC's control of Bering's operations at the time RI Mack terminated its Bering dealership in March, 2001.**

**13. Request:** Copies of all records relating to Bering's management of FMCC's assets and the winding up of Bering's business from June 1, 2001 to the present.

**Plaintiff's Objection:** "Plaintiff objects to this request on the grounds it is overbroad, burdensome and seeks documents not likely to lead to the discovery of admissible evidence. This case concerns only 11 vehicles purchased by defendant and financed by plaintiff. Moreover, RI Mack cancelled its dealership agreement with Bering in March 2001. FMCC took possession of Bering's assets in June 2001."

**Plaintiff's Response:** "See objection."

**Argument: The requested documents will show the extent of FMCC's control over Bering's operation at the time Bering ceased doing business in June, 2001.**

**14. DELETED**

**15. Request:** Copies of all Complaints filed against Bering dealers, Hyundai Motors, Daimler Chrysler or any other lawsuit arising out of FMCC's relationship with Bering or its dealers.

**Plaintiff's Objection:** "Plaintiff objects to this request on the grounds it is overbroad, burdensome and seeks documents not likely to lead to the discovery of

admissible evidence. This case concerns only 11 vehicles purchased by defendant and financed by plaintiff."

**Plaintiff's Response:** "See objection."

**Argument: Plaintiff should be required to produce copies of all Complaints filed against other Bering Dealers and the defendants' Answers. In Answer to Interrogatory 20, Bering indicates that it had filed suit against U. S. Leasing, August Schmidt, Midwest Diesel, Hickory International, Truck Sales of America, International Truck, Marotta's Truck, Ballard Mack, Southland, Diversified, Daigle & Houghton, Robert B. Hoover and Bernie Enterprises.**

**16. Request:**. Copies of all documents relating to FMCC's agreement with Bering to provide floor plan financing for authorized Bering dealers.

**Plaintiff's Response:** "There was no such agreement."

**Argument: Plaintiff has not produced any responsive documents. The attached Affidavit of Richard Riley Frisbee indicates that Bering executives, William Anderson, Michael Roach, Duncan Sellers and Harry Saxton developed the floor plan financing program with Bering.**

**17. Request:**. Copies of all documents relating to Bering's agreement to make payments directly to FMCC on its dealers accounts.

**Plaintiff's Response:** "FMCC is not aware of any such agreement. FMCC

is aware that Bering's dealer manual provided that it would pay sixty days of interest to FMCC."

Argument: **FMCC should produce all documents which reflect its knowledge that Bering would pay 60 days of interest to FMCC for its dealers.**

**18. Request:**. All records relating to notification to FMCC that RI Mack had terminated its Bering dealership as of March, 2001.

**Plaintiff's Objection:** "Plaintiff objects to this request to the extent it seeks documents protected from discovery by the attorney-client privilege or the work-product doctrine."

**Plaintiff's Response:** "See attached response."

Argument: **Plaintiff should be compelled to identify all alleged attorney-client or work-product privileged documents.**

**19. DELETED**

**20. Request:** All documents reflecting bids submitted for the vehicles and the sale of such vehicles.

**Plaintiff's Response:** "The highest bids were accepted and are reflected on the record of sales being produced."

Argument: **No sales records have been produced. Plaintiff should be**

**required to produce all documents pertaining to FMCC's sale of the 11 vehicles.**

**21. DELETED**

JAMES H. REILLY #0658
KELLY, KELLEHER, REILLY &
SIMPSON
Attorney for Defendant
146 Westminster Street, Suite 500
Providence, Rhode Island 02903
(401) 272-1312
(401) 331-9397 (fax)

To: Thomas W. Lyons, Esquire
Strauss, Factor, Laing & Lyons
222 Richmond Street, Suite 208
Providence, Rhode Island 02903

CERTIFICATION

I hereby certify that I mailed a copy of the within Motion to Compel More Responsive Answers to Request for Production to the above counsel of record on February 22, 2006.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| FORD MOTOR CREDIT COMPANY | : | |
| | : | |
| -vs- | : | C.A. NO. 05-137S |
| | : | |
| RHODE ISLAND MACK SALES | : | |
| & SERVICE, INC. | : | |

**DEFENDANT RHODE ISLAND MACK SALES & SERVICE, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND MOTION TO COMPEL MORE RESPONSIVE ANSWERS TO INTERROGATORIES**

**Background**

Plaintiff Ford Motor Credit Company's (hereinafter "FMCC") Complaint seeks recovery against defendant Rhode Island Mack Sales & Service, Inc. (hereinafter "RI Mack") for amounts allegedly due for "floor plan financing" which FMCC provided to RI Mack for trucks which RI Mack purchased new from Bering Truck Corp., Bering Truck Distributors, LLC and its affiliates (hereinafter jointly referred to as "Bering"). At all relevant times, FMCC was Bering's primary lender and secured party. As such, FMCC had full knowledge of Bering's financing arrangements with its distributors such as RI Mack. At all times, FMCC was aware of Bering's financial condition and ability to comply with the terms and conditions of its Dealership Agreement with RI Mack.

RI Mack had entered into such a Dealership Agreement with Bering on April 7, 1999, to act as a Bering truck distributor. On April 21, 1999, RI Mack executed an Automotive Wholesale Plan with FMCC to provide "floor plan financing" for the

vehicles it would be acquiring from Bering.

As part of its solicitation of dealers, Bering represented that floor plan financing would be available through FMCC. Neither Bering nor FMCC advised RI Mack or other dealers of their secured creditor-debtor relationship. In soliciting new dealers and to encourage dealers to stock Bering vehicles, Bering offered an "Initial Stock Order Program" which provided one full year of free financing on all floor-planned vehicles that were ordered by RI Mack and other dealers to satisfy the initial inventory level required by Bering. (See Affidavit of Richard Riley Frisbee attached hereto as Exhibit A). Bering represented that it would make all such interest payments directly to FMCC. All of the foregoing representations were made orally by Bering to RI Mack and were known and authorized to by FMCC.

After becoming an authorized dealer, Bering requested RI Mack to, at no cost, take consignment, store and display four HD 67 cement mixers. Due to their small size and design, RI Mack knew that these cement mixers were not attractive to the marketplace. RI Mack never authorized the vehicles being charged to its floor plan. It took possession of the vehicles solely as an accommodation to Bering. FMCC was aware and approved of this so-called "Mixer Program" (see Exhibit A, Affidavit of Richard Riley Frisbee).

Acting pursuant to Article 11.6 of the Bering Dealership Agreement, RI Mack notified Bering on March 22, 2001, that it was terminating its dealership agreement. On May 11, 2001, Bering acknowledged receipt of the termination

letter and advised RI Mack that it would forward instructions regarding the return of its inventory of trucks. At the time of the termination, RI Mack had eleven (11) Bering vehicles in its possession which included the four HD67 cement mixers which were being stored on its property as a courtesy to Bering. Neither Bering nor FMCC took any action to take possession of the vehicles in RI Mack's possession.

In June, 2001, Bering suspended all of its operations due to a dispute with Hyundai Motor Co. ("Hyundai"), with which it had an agreement to be the exclusive United States commercial truck distributor for Hyundai, a Korean company. Upon learning that Bering was going out of business, RI Mack notified Bering, FMCC and Hyundai and requested that they take possession of the Bering vehicles. However, FMCC did not attempt to retrieve the vehicles until April, 2002. As the primary secured creditor, FMCC acquired all of Bering's assets and was in control of the company's liquidation after it went out of business.

RI Mack alleges that FMCC in effect had control over Bering's operation and was the "alter ego" or "successor in interest" to Bering. Bering breached its agreement that RI Mack would have no financial obligations for the four cement mixers. Furthermore, in March 2001 (3 months before Bering went out of business), RI Mack notified Bering it was terminating its dealership agreement. Bering breached its obligation to take immediate possession of the vehicles and indemnify RI Mack from any financial liability to FMCC. RI Mack alleges that FMCC had full knowledge of its dealership termination and directed, encouraged or

approved of Bering's inaction knowing that Bering would shortly be going out of business. By not taking possession of the vehicles, FMCC preserved its claim against RI Mack, rather than receiving the vehicles as part of Bering's "Voluntary Surrender" of its assets.

**Travel of the Case**

RI Mack filed an Answer to FMCC's Complaint on or about April 22, 2005 and pled the Affirmative Defenses of fraud, laches, waiver and plaintiff's failure to dispose of collateral in a commercially reasonable manner.

On June 23, 2005, RI Mack submitted its Settlement Conference Statement. As a result of a Settlement Conference held on June 27, 2005, a Pretrial Order was entered providing for a Discovery Closure Date of January 17, 2006. On August 26, 2005, RI Mack propounded Interrogatories to FMCC and a Request for Production of Documents. On or about September 29, 2005, the parties filed an Enlargement Stipulation allowing FMCC until October 6, 2005 to respond to RI Mack's discovery. On December 30, 2005, RI Mack provided its Answers to Interrogatories and Document Production to FMCC. On January 25, 2006, the Court granted the parties Joint Motion to extend the discovery closure date an additional ninety days. On January 13, 2006, FMCC responded to Plaintiff's Request for Production of Documents.

**Argument**

Plaintiff's Discovery Responses are unresponsive, incomplete, evasive and

not made in good faith. For the most part, FMCC has merely copied records previously produced by RI Mack in this litigation. The only new documents produced by FMCC are noted in RI Mack's Motion to Compel Production of Documents and Motion to Compel More Responsive Answers to Interrogatories submitted herewith.

JAMES H. REILLY #0658
KELLY, KELLEHER, REILLY &
SIMPSON
Attorney for Defendant
146 Westminster Street, Suite 500
Providence, Rhode Island 02903
(401) 272-1312
(401) 331-9397 (fax)

To: Thomas W. Lyons, Esquire
Strauss, Factor, Laing & Lyons
222 Richmond Street, Suite 208
Providence, Rhode Island 02903

CERTIFICATION

I hereby certify that I mailed a copy of the within Memorandum and Motion to the above counsel of record on February 22, 2006.