UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Ford Motor Credit Company | ) | |
| | ) | |
| Vs. | ) | C.A. NO. 05-137S |
| | ) | |
| Rhode Island Mack Sales & Service, Inc | ) | |

**PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Plaintiff, Ford Motor Credit Company, hereby objects to defendant R.I. Mack's motion to compel production of documents for reasons set forth in the accompanying memorandum of law.

FORD MOTOR CREDIT COMPANY
By its attorneys,

/s/ Thomas W. Lyons

Thomas W. Lyons, R.I. Bar 2946
Strauss, Factor, Laing & Lyons
222 Richmond Street, Suite 208
Providence, R.I. 02903
Tel. (401)456-0700
Fax (401)421-4730
tlyons@straussfactor.com

DATED: March 3, 2006

**CERTIFICATION**

I hereby certify that on this 6th day of March, 2006, a copy of the within was sent to James H. Reilly, Esq., Kelly, Kelleher, Reilly & Simpson, 146 Westminster Street, Suite 500, Providence, RI 02903 by regular mail, postage prepaid.

Christine Abrames

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Ford Motor Credit Company | ) | |
| | ) | |
| Vs. | ) | C.A. NO. 05-137S |
| | ) | |
| Rhode Island Mack Sales & Service, Inc | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS OBJECTION**
**TO DEFENDANT'S MOTIONS TO COMPEL**

This is an action by plaintiff Ford Motor Credit to collect deficiencies on eleven vehicles. Defendant Rhode Island Mack Sales & Service, Inc. (R.I. Mack) purchased the vehicles from a non-party, Bering Truck Corp., and Ford Motor Credit Company (FMCC) financed the purchase. Defendant's discovery motions should be denied because they seek information that will not lead to the discovery of admissible evidence.

Defendant Rhode Island Mack's motions focus on the relationship between FMCC and Bering. Bering was the United States distributor of light construction vehicles for Hyundai Motor Company. The vehicles bore a Bering nameplate. R.I. Mack was an established distributor for Mack trucks and other manufacturers. It signed a dealership agreement with Bering and purchased vehicles from Bering. FMCC provided financing to both Bering and R.I. Mack and had security agreements with both. In March 2001, R.I. Mack terminated its dealership agreement with Bering. In June 2001, Bering ceased doing business as a distributor (though it continues to exist) and it assigned its secured assets to FMCC.

R.I. Mack argues that FMCC is a success-in-interest to Bering and subject to whatever defenses R.I. Mack would have against Bering. This argument is the basis for much of R.I. Mack's discovery. However, this is an argument that the United States District Court for the District of

Minnesota has specifically rejected on two occasions. See, Ford Motor Credit Company v. U.S. Leasing & Sales, Inc., 2003 WL 21005290 (D.Minn. April 15, 2003); Ford Motor Credit Company v. Midwest Diesel Service, Inc., 2003 WL 22901837 (D.Minn. Nov. 26, 2003) (attached at Tab A).* The Richard Frisbie affidavit that R.I. Mack attaches to its motion was filed in that litigation. Plainly, the District of Minnesota did not believe it raised sufficient facts when it held as a matter of law that FMCC was not Bering's successor. FMCC attaches the affidavit of its former employee, Harry Saxton, that it submitted in the above case to explain the transactions between FMCC and Bering (attached at Tab B).

It is also generally the law in Rhode Island and elsewhere that a secured party is not the successor-in-interest to the debtor's (i.e. Bering's) obligations. "The existence of a security interest, agricultural lien, or authority given to a debtor to dispose of or use collateral, without more, does not subject a secured party to liability in contract or tort for the debtor's acts or omissions." R.I.G.L. §6A-9-402. Here, FMCC is asserting its rights under its financing agreements with R.I. Mack. Defendant is attempting to assert as defenses Bering's dealership agreement with R.I. Mack.

Under these circumstances, it is well settled that a secured party does not become bound to the debtor's obligations, as an assignee or otherwise. See, AG Services of America, Inc. v. Debruce Grain, Inc., 19 P.3d 188 (Kan.App. 2001) ("[w]e fail to see how Ag Services is transferred from a secured party into an assignee of an account debtor"); Spielman v. Acme National Sales

*Moreover, those other Bering dealers had "stronger" arguments than R.I. Mack. Those other dealers were still Bering dealers when Bering ceased doing business. By contrast, R.I. Mack terminated its dealership agreement with Bering in March 2001, three months before Bering ceased doing business in June 2001. Thus, FMCC's relationship with R.I. Mack in June 2001 is irrelevant.

Co., 572 N.Y.S.2d 400, 402 (App.Div. 1991) ("a secured creditor should not be bound to contracts entered into between the debtor and third parties, notwithstanding the secured creditor's possession of the debtor's assets as collateral after default"); see, also, Campanella v. Commerce Exchange Bank, 745 N.E.2d 1087, 1097 (Ohio App. 8 Dist. 2000) (noting that under equivalent Ohio commercial statute, a secured creditor is not liable for any contract obligations between debtor and a third party); Lambros v. Aetna Casualty and Surety Co., 468 F.Supp. 624, 628 (S.D.N.Y. 1979) (holding the secured creditor's involvement in the financial affairs of this debtor neither merges the identity of the companies nor binds the creditor to the contractual obligations of the debtor); First Nat. Bank & Tr. Co. of Enid v. Holston, 559 P.2d 440, 444 (Okla. 1977) ("The secured creditor is not bound to honor the debtor's contracts with third parties"); Brandes v. Pettibone, 360 N.Y.S. 814, 818 (N.Y.Sup.Ct. 1974) (party holding a security interest cannot be obligated by debtor's contracts).

Based on the affidavit of Richard Frisbie, attached to defendant's motion, it appears that defendant also argues that FMCC somehow represents a continuation of the Bering corporation, and therefore should be liable as a successor. Defendants base this argument on innocuous conduct such as FMCC selling the repossessed collateral and attending a Bering dealer conference. Relevant case law illustrates the fallacy of this argument.

As an initial matter, the general rule is that a corporation may acquire the assets of another corporation without assuming the acquired corporation's debts or obligations. Fraoli v. Lemke, 328 F.Supp.2d 250 (D.R.I. 2004). The exceptions are when:

1) The acquiring corporation expressly assumes existing debts or obligations;
2) There is a defacto merger;
3) The acquisition involves a transfer of assets to defraud creditors; or

4) The acquiring corporation is a "mere continuation" of the transfer corporation.

Id. Notably, a transfer of secured assets to the secured party is not a fraudulent transfer unless the objecting party shows that the value of the transferred assets exceeds value of security interest. Ed Peters Jewelry Co. Inc. v. C&J Jewelry Co. Inc., 124 F.3d 252 (1st Cir. 1997) (Ed Peters I), citing R.I.G.L. §6-16-1(b), 6-16-4(a)(1).

"In determining whether one corporation is a continuation of another, the test is whether there is a continuation of the corporate entity of the transferor *not whether there is a continuation of the transferor's business operations.* The traditional indications of "continuation" are:

1) There is a transfer of corporate assets;
2) There is less than adequate consideration;
3) The new company continues the business of the transferor;
4) Both companies have at least one common officer or director who is instrumental in the transfer; and
5) The transfer renders the transferor incapable of paying its creditors because it is dissolved either in fact or by law.

Ed Peters Jewelry Co. v. C&J Jewelry Co., 215 F.3d 182 (1st Cir. 2000) (Ed Peters III); H.J. Baker & Bros. Inc. v. Orgonics, Inc., 554 A.2d 196 (R.I. 1989). Rhode Island law requires proof of all five factors. Ed Peters III at 198 n.4.

Even under the affidavit presented by the defendant, it is clear that FMCC does not represent a "continuation" of Bering. FMCC and Bering have always been completely distinct entities, with entirely different officers, directors, and shareholders. Although the affidavit alleges that FMCC coordinated the repair of defective Bering vehicles and sold vehicles through Bering dealerships, it is clear that a mere continuation of some *business operations* does not trigger successor corporate liability. Id. (emphasis added). FMCC merely took actions to maximize its ability to sell the repossessed collateral at the highest possible rate – this should not subject it to

all of its debtor's contractual obligations. Because FMCC did not become Bering's assignee or successor upon enforcing its security agreement, FMCC is not bound by any agreements between Bering and defendant.

To emphasize the distinction between FMCC and Bering, FMCC notes that in 2001, Bering sued Hyundai and Daimler-Chrysler alleging they had conspired to drive Bering out of business. The case went into arbitration and in a detailed 67 page decision an international arbitration panel upheld many of Bering's claims and awarded it over $6 million in damages including interest. (excerpt attached at Tab C). Most pertinent to this motion, the United States District Court for the Western District of Virginia subsequently entered an order in January 2006 to implement the distribution of the award proceeds (attached at Tab D). The order recognized that FMCC and Bering had competing claims to part of the proceeds. In other words, FMCC is not the successor-in-interest to Bering.

R.I. Mack also claims that it took possession of four Bering dump trucks "as a favor" to Bering. (In fact, R.I. Mack's initial correspondence did not claim that the four cement mixers were not purchased, see attached at Tab E). However, even if this were true, R.I. Mack had contractually waived that argument by March 2001. The parties' Automotive Wholesale Plan ("floor plan") Agreement requires R.I. Mack to promptly alert FMCC if it disputes whether it purchased any vehicles from FMCC:

> ... Ford Credit may pay any manufacturer, distributor or other seller of the merchandise the invoice or contract amount thereto and be fully protected in relying in good faith upon any such invoice, contract or other advice from such manufacturer, distributor or seller that the merchandise described therein is correctly stated ... From time to time, Ford Credit shall furnish statements to Dealer of Advances made to Ford Credit hereunder. Dealer shall review the same promptly upon receipt and shall advise Ford Credit in writing of any discrepancy

in such statement within ten calendar days following the receipt thereof...

(see attached at Tab F). FMCC sent R.I. Mack weekly monthly reports that listed the vehicles in defendant's "floor plan" financing. Those reports included the four cement mixers that R.I. Mack now claims it did not purchase. (See attached reports at Tab G.) It never objected to those cement mixers being listed on the weekly reports until FMCC made a demand for payment.

## Conclusion

The court should sustain Ford Motor Credit Company's objections to Rhode Island Mack's discovery because, as a matter of law, the discovery cannot lead to the discovery of admissible evidence.

FORD MOTOR CREDIT COMPANY
By its attorneys,

Thomas W. Lyons, R.I. Bar 2946
Strauss, Factor, Laing & Lyons
222 Richmond Street, Suite 208
Providence, R.I. 02903
Tel. (401)456-0700
Fax (401)421-4730
tlyons@straussfactor.com

DATED: March 6, 2006

## CERTIFICATION

I hereby certify that on this 6th day of March, 2006, a copy of the within was sent to James H. Reilly, Esq., Kelly, Kelleher, Reilly & Simpson, 146 Westminster Street, Suite 500, Providence, RI 02903 by regular mail, postage prepaid.

Christine Abrams