UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| BERING TRUCK DISTRIBUTION, LLC, BERING TRUCK CORPORATION, and BTC RESOLUTION, LLC, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civ. No. 5:01CV00056 |
| HYUNDAI MOTOR COMPANY, and DAIMLER CHRYSLER AG, | ) | |
| Defendants. | ) | |

**AGREED MOTION TO APPROVE QUALIFIED SETTLEMENT FUND**

The parties to the above-captioned suit have entered into a Settlement Agreement. Pursuant to that Settlement Agreement, the defendants are obligated to pay the Settlement Amount to BTC Resolution, LLC ("BTCR") and other specified designees if certain conditions are met.

As explained more fully below, a substantial portion of the Settlement Amount is claimed to be owned by both BTCR and Ford Motor Credit Company ("Ford"), which is a secured lender to BTCR's predecessors in interest and also is a party to an assignment agreement relating to the claims being settled against the defendants. In order to facilitate the settlement, the parties and Ford have agreed that the portion of the proceeds claimed by both BTCR and Ford will be subject to an escrow agreement and will be placed in an escrow account that BTCR will establish as a Qualified Settlement Fund ("QSF"), which is a vehicle recognized by the Internal Revenue Code regulations for the receipt of settlement proceeds that are claimed by more than one party.

BTCR respectfully requests that the Court (i) approve the QSF, (ii) act as the QSF authority, and (iii) retain jurisdiction over the QSF, all as required by IRS Regulations, until such time as the dispute between Ford and BTCR is resolved as to the ownership of the funds in question. In support of its motion, BTCR states as follows:

**A. The Settlement Agreement**

1. On September 30, 2005, the parties to this action entered into a Confidential Settlement Agreement.

2. The Settlement Agreement requires that a number of conditions be met before the settlement proceeds are paid by the defendants to BTCR or to other specified recipients. Among other things, the Settlement Agreement requires that BTCR, Bering Truck Distribution, LLC ("Bering Distribution"), and Bering Truck Corporation ("Bering Truck") (collectively the "Bering Entities"), provide the defendants with releases from certain of the Bering Entities' officers, directors, managers, shareholders and members, and also from Ford.

3. Ford was a secured lender to the Bering Distribution and Bering Truck. Ford and the Bering Entities also are parties to an Assignment of Claims Agreement dated April 10, 2001, which addresses the Bering Entities' claims against Hyundai Motor Company ("HMC") and DaimlerChrysler AG ("DCAG") (the "Assignment"). Pursuant to the Assignment, BTCR provided Ford both with a Security Agreement and Collateral Assignments. Ford asserts that under the terms of the Assignment it is entitled to a certain portion of the Settlement Amount. BTCR disputes Ford's claim.

4. The Settlement Agreement provides that the portion of the Settlement Amount subject to Ford's claim (the "QSF Amount") will be placed in escrow and held as a QSF until such time as Ford and BTCR resolve their dispute through agreement, mediation, or litigation, if necessary. With the assurance that the money it claims would be held in escrow pending resolution of its dispute with BTCR, Ford agreed to provide the defendants, Hyundai Motor Company ("HMC") and DaimlerChrysler AG ("DCAG") with a release required by the Settlement Agreement

**B. The Qualified Settlement Fund**

5. A QSF is an arrangement that is recognized by the Internal Revenue Code and applicable regulations (*see* 26 C.F.R. 1.468B). A QSF allows the judgment or settlement proceeds resulting from a contested claim that are, in turn, claimed by more than one party (*i.e.*, the "disputed funds") to be paid into an escrow account that meets certain requirements. If the disputed funds are paid into a QSF that meets the applicable requirements, the potential recipients of the funds are not required to declare income or pay income taxes on the disputed funds until such time as the funds in dispute are actually distributed. Even though the potential recipients do not have to immediately declare income or pay tax on the disputed funds, the payor of the disputed funds is allowed to immediately deduct the payment.

6. In the current case, BTCR seeks to establish a QSF that satisfies the Internal Revenue Code regulations so that BTCR and Ford may defer declaring income and paying tax on the QSF Amount until it is determined how much, if any, of the QSF Amount each is to receive and that money is distributed to them.

**C. The Required Elements of a QSF**

7. In order to be entitled to this favorable tax treatment, the IRS Regulations require that the QSF fund be "approved by" and "subject to the continuing jurisdiction of [a] governmental authority" (*i.e.*, the "QSF Authority") which "include[s] a court of law." 26 C.F.R. 1.468B-1(c)(1).

8. In the current case, the parties have entered into a QSF Escrow Agreement[1] providing that the portion of the Settlement Amount in dispute between Ford and BTCR be held in a "QSF Escrow Account" until either (1) BTCR and Ford resolve their dispute and jointly instruct the escrow agent, which will be BB&T Bank, in writing as to how to distribute the funds and the QSF Authority approves of that joint instruction; or (2) the matter in dispute between Ford and BTCR is conclusively decided by a court, and the QSF Authority, based on that judicial determination, issues an order to the Escrow Agent directing how and to whom the monies in the QSF Escrow Account are to be distributed.[2]

9. In this regard, the QSF functions in a manner similar to an interpleader action. (*See* Fed. R. Civ. P. 22.) The disputed funds are placed in an escrow account and cannot be

---

1 The QSF Escrow Agreement will be delivered to the Court separately. DCAG's counsel has advised the other parties that DCAG will deliver DCAG's signature pages for the QSF Escrow Agreement next week, *i.e.*, the week of January, 9, 2006. The other parties to the QSF Escrow Agreement have exchanged signatures.

2 It is possible that, if Ford and Bering do not resolve their dispute by agreement or through an agreed alternative dispute process, one or both of the parties may seek to have this Court adjudicate the Ford/Bering dispute. It is also possible that a judicial determination of the merits of that dispute could be made by some other state or federal court. In either event, this Court would act as the "QSF Authority" and would be asked to issue an Order directing the Escrow Agent to distribute the QSF Funds pursuant to the judicial resolution.

disbursed without an order of this Court following either a settlement of the dispute between Ford and BTCR or a judicial determination of the merits of that dispute.

10. By this Agreed Motion, BTCR requests that this Court (1) approve the establishment of the QSF, and (2) retain jurisdiction in order to act as the QSF Authority and to approve the distribution of the QSF Amount from the QSF.

11. Simultaneous with this motion, the parties are also submitting a Stipulated Motion to Dismiss BTCR's Claim against Defendants with Prejudice. In that motion, the parties request that the Court retain jurisdiction over this action for a period of 60 days for the purpose of reinstating the BTCR Entities= claims if HMC and DCAG fail to cause the Settlement Amount to be paid as required.[3] By this motion, BTCR also requests that the Court retain jurisdiction over the QSF in order to act as the QSF Authority and approve the distribution of the QSF Amount from the QSF.

12. Numerous courts have recognized that it is proper to retain jurisdiction over a matter even though the underlying claims have been dismissed in order to enforce a settlement agreement or to see to the proper disbursement of proceeds out of a settlement fund. *Goddshall v. The Franklin Mint Co.*, 2004 U.S. Dist. LEXIS 23976, *26 (E.D. Pa. 2004) (approving qualified settlement fund under ' 1.468B-1(a) of the Treasury Regulations, *i.e.*, QSF

---

[3] Settlement Agreement § 5.13 provides that, subject only to the Bering Entities' right to move for reinstatement during the 60 day period, any controversy or claim relating to the Settlement Agreement shall be determined according to specified alternative dispute resolution procedures. In the event of reinstatement of the Bering Claims, the defendants reserve the right to assert any defenses they may have to the Bering Claims, including, without limitation, DCAG's asserted defense under Fed. R. Civ. P. 12(b)(2).

regulations). and retaining continuing jurisdiction of matter for purposes of implementing Settlement Agreement and satisfying QSF Regulations); *accord Nichols v. Smithkline Beecham Corp.*, 2005 U.S. Dist. LEXIS 7061, *96-97 (E.D. Pa. 2005). Indeed, virtually every class action settlement recovery requires that the Court retain jurisdiction after the dismissal of the underlying claims in order to administer the distribution of the settlement funds to the class members. *E.g., Henley v. FMC Corp.*, 207 F. Supp. 2d 489 (S.D. W. Va. 2002) (approving class settlement agreement, including deposit of settlement funds into qualified settlement fund, and retaining jurisdiction over matter for purposes of ensuring satisfactory execution of settlement "along with allocation and distribution of all settlement funds and fees and costs"), citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-82 (1994).

**D. The Consent of All Parties**

13. The other plaintiffs, the defendants and Ford consent to the relief requested in this motion, and specifically consent to the Court (1) approving of the establishment of the QSF, (2) acting as the QSF Authority, and (3) retaining jurisdiction to approve the distribution of the funds out of the QSF.[4]

---

[4] In addition to approving this motion, Ford has had the opportunity to review the Confidential Settlement Agreement and Release and has approved the Qualified Settlement Fund Escrow Agreement.

WHEREFORE, BTCR respectfully requests the Court to issue an Order:

A. Approving the establishment a Qualified Settlement Fund, as described in the QSF Agreement, pursuant to I.R.S. Regulations (26 C.F.R. 1.468B);

B. Establishing this Court as the QSF Authority; and

C. Retaining jurisdiction to act as the QSF Authority until the QSF Amount is distributed.

Respectfully submitted,

BTC RESOLUTION, LLC

By: William E. Shmidheiser III
One of its attorneys

Paul E. Slater
Greg Shinall
SPERLING & SLATER, P.C.
55 W. Monroe Street, Suite 3200
Chicago, Illinois 60603
(312) 641-3200

William E. Shmidheiser, III (VSB # 19047)
KEELER OBENSHAIN PC
90 North Main Street, P. O. Box 1287
Harrisonburg, VA 22803
(540) 437-3137
(540) 437-3101 FAX

69105.doc

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JAN 3 0 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

SPERLING & SLATER
PROFESSIONAL CORPORATION

TELEPHONE
(312) 641-3200
FACSIMILE
(312) 641-6492

55 WEST MONROE STREET
SUITE 3200
CHICAGO, IL 60603

January 23, 2006

Honorable James C. Turk
Senior Judge, Western District of Virginia
246 Franklin Road, SW
Room 220
Roanoke, VA 24011

Re: Bering Truck Distribution, et al. v. Hyundai Motor Co., et al., No. 5:01 CV 56

Dear Judge Turk:

On January 9, 2006, Your Honor entered two orders. The first order dismissed the claims set forth in the above-captioned matter with prejudice, but retained jurisdiction pending the payment of the agreed Settlement Amount. The second order established a Qualified Settlement Fund ("QSF") and retained jurisdiction for the purpose of approving the disposition of funds out of the QSF. During the hearing on January 9, 2006, I advised the Court that I, or other Bering counsel, would keep Your Honor apprised of developments pertinent to both orders.

I am pleased to report that on January 13, 2006, the settlement proceeds were wire-transferred by the defendants as provided for in the Settlement Agreement. A portion of the settlement amount was used to fund the QSF, which is now open. As the Court has retained jurisdiction in order to function as the QSF authority, we will keep Your Honor advised of any developments with regard to the QSF and the disposition, by agreement or Court order, of any of its funds.

All of the parties join me in thanking Your Honor for the time and attention you have given this matter.

Very truly yours,

Paul E. Slater

PES/jlg
cc: Counsel of Record

Received Jan. 30, 2006
James C. Turk
Sr. District Judge