**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
**FORD MOTOR CREDIT COMPANY**, Plaintiff,
v.
U.S. LEASING & SALES, INC., a Minnesota corporation, and Loren Backlund, Defendants.
**FORD MOTOR CREDIT COMPANY**, Plaintiff,
v.
MIDWEST DIESEL SERVICE, INC., a Minnesota corporation, Gerald Reiter, and Karen Reiter, Defendants.
**No. Civ.02-2925(JRT/FLN).**

April 15, 2003.

Thomas L Nuss, Dorsey & Whitney, Minneapolis, MN, for plaintiff.

Ronald K. Gardner, Jr., and Sarah A. Johnston, Dady & Garner, Minneapolis, MN, for defendants.

MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS OR STAY

TUNHEIM, J.

***1** Plaintiff Ford Motor Credit Company filed these actions against defendants U.S. Leasing & Sales, Inc. and Loren Backlund, and defendants Midwest Diesel Service, Inc. and Gerald and Karen Reiter ("defendants") to collect payments allegedly due on financing contracts between plaintiff and defendants. Defendants moved to stay or dismiss the case, pending arbitration. For the reasons discussed below, the Court denies defendants' motions.

BACKGROUND

Defendants operate motor vehicle dealerships in Minnesota and were authorized dealers of **Bering**-branded commercial trucks, parts, and services. Plaintiff provided financing for defendants' purchase of inventory of **Bering**-brand trucks and parts. Defendants and **Bering** Truck Corporation ("**Bering**") entered distributorship agreements that contained a broadly worded arbitration clause. [FN1]

FN1. In pertinent part, the clause provides:
Resolution of disputes.
(A) Any claim by Dealer pertaining to or arising from the exercise of Distributors rights under Article 15 of this Addendum, or any claim by Dealer that Distributor did not have good cause for termination of this Agreement pursuant to Article 11, or has failed to act in good faith, or has acted improperly in terminating this Agreement under the laws of the state in which Dealer is located or under the Vehicle Dealers' Day in Court Act, 15 USC § 1221 et seq., shall be submitted to arbitration in the following manner:
[The specifics of the arbitration--timing, location, etc. are then discussed].
(B) All other disputes in which the parties cannot resolve among themselves shall be decided, at Dealer's option, either by binding arbitration or by litigation.... If Distributor institutes litigation and Dealer elects to proceed with arbitration, the dispute shall be transferred to arbitration in the location set out in this Subsection.

**Bering** asked its dealers, including defendants, to *maintain high inventories* of parts and trucks. Because dealers borrow to finance the purchase of their inventory, they must pay insurance on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

inventory, in addition to paying interest on the borrowed funds. Maintenance of large inventories, therefore, often leads to high interest and insurance charges. As an incentive for defendant dealers to maintain these inventories, **Bering** agreed to pay one year of interest fees and insurance charges, and then to remove any unsold vehicles remaining at the end of the one-year period. In this way, the defendant dealers could maintain large inventories without being subjected to excessive interest and insurance charges. Apparently, these were verbal agreements between **Bering** and the defendant dealers. There is some evidence that plaintiff knew about this arrangement, but there is no indication that plaintiff was a party to the verbal agreement.

To obtain this large inventory, **Bering** suggested that defendants obtain financing through plaintiff, and defendants did so. [FN2] Plaintiff and defendants entered into "Wholesale Financing and Security Agreements" ("financing agreements") under which plaintiff granted defendants lines of credit by which defendants could obtain funds to purchase vehicles that would later be sold or leased to consumers from defendants' retail sales establishments. The financing agreement provided that defendants would pay monthly interest charges on money advanced, and would also pay insurance charges. The financing agreement does not contain an arbitration clause. During this time, plaintiff had a separate relationship with **Bering** as **Bering's** primary financer and secured creditor.

FN2. At the time, plaintiff FMCC was doing business as **Bering** Financial Services. Plaintiff operates under various private labels and plaintiff argues that the name does not indicate any interest in **Bering** Truck Corporation.

**Bering** paid the insurance and finance charges to plaintiff, but stopped making those payments before the one-year period expired. Despite **Bering's** failure to pay, plaintiff did not attempt to collect the interest or insurance charges from defendants or from **Bering** for several months. **Bering** dissolved shortly after it stopped making the finance payments, and all **Bering** assets were transferred to plaintiff, to whom **Bering** referred as "our secured lender." Several months after **Bering** dissolved, plaintiff began attempting to collect the interest and insurance charges from defendants.

ANALYSIS

***2** In Minnesota, relationships between dealers of heavy equipment and the manufactures of that equipment are governed by the Minnesota Heavy and Utility Equipment and Manufacturers and Dealers Act ("MHUEMDA"). Minn.Stat. §§ 325E.068 *et seq.* MHUEMDA clearly governs the relationship between **Bering** and defendants. At issue in this dispute is whether MHUEMDA's definition of "successor in interest" transforms the financing dispute between plaintiffs and defendants into a dispute between defendants and **Bering.** In other words, the Court must determine whether plaintiff is a successor in interest to **Bering,** and if so, if plaintiff's status as successor in interest necessitates arbitration of the financing dispute based on the arbitration agreement in the distributorship agreements. [FN3]

FN3. The Court does not address whether other aspects of the parties' relationship might be governed by MHUEMDA.

I. Standard of Review

The Federal Arbitration Act ("FAA") governs the arbitration clause in the distributorship agreement. *See Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983) (the FAA governs controversies involving interstate commerce). The FAA, 9 U.S.C. §§ 1-16, was enacted "to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991). The FAA requires a court to enforce a written arbitration agreement as it would any other contract. 9 U.S.C. § 2 ("A written provision ... to settle by arbitration a controversy ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Despite the strong federal preference for arbitration, *see, e.g ., Volt Info. Sciences v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468 (1989), a party cannot be compelled to arbitrate unless there is a contractual agreement to do so. *Matter of Talbott Big Foot, Inc.,* 887 F.2d 611, 614 (5th Cir.1989). To succeed on a motion to compel arbitration, the moving party must show (1) that there is a valid arbitration agreement in effect between the parties, and (2) that the present dispute is within that agreement. *Fleet Boston Robertson Stephens v. Innovex, Inc.,* 264 F.3d 770, 773 (8th Cir.2001); *Lebanon Chem. Corp. v. United Farmers Plant Food, Inc.,* 179 F.3d 1095, 1100 (8th Cir.1999). As the Court undertakes this analysis, any doubts concerning the scope of the coverage of an arbitration clause are resolved in favor of arbitration. *A.T. & T. Technologies, Inc. v. Communication Workers of Am.,* 475 U.S. 643, 650 (1986); *Teamsters Local Union No. 688 v. Industrial Wire Products, Inc.,* 186 F.3d 878, 882 (8 th Cir.1999).

II. MHUEMDA

Defendants argue that the arbitration clause in the distributorship agreement should be enforced against plaintiffs, because plaintiffs are a successor in interest to **Bering.** Understanding defendants' argument is an exercise in logic, which proceeds as follows: Under MHUEMDA's definition of "successor in interest," plaintiff is a successor in interest to **Bering.** Pursuant to a verbal agreement between **Bering** and defendants, **Bering** was responsible for paying the finance and interest charges to plaintiff, therefore disputes about the insurance and interest charges are really disputes between **Bering** and defendants. All disputes between **Bering** and defendants must be arbitrated. Because this is a dispute about the insurance and interest charges, defendants claim, it is really a dispute between **Bering** and defendants and must be arbitrated.

***3** Central to this argument is the proposition that MHUEMDA defines "successor in interest" broadly enough to reach the parties' relationship based on the financing agreements. The Court therefore turns to the statutory scheme to determine if the statute fairly supports such an interpretation.

The Court does not have the benefit of a significant body of case law interpreting the MHUEMDA, and no reported case has addressed this specific question. *See e.g., Astleford Equip. Co. v. Navistar Int'l Transp. Corp.,* 632 N.W.2d 182 (Minn.2001) (recognizing without discussion that defendant manufacturer was a "successor in interest"). Minnesota Courts have held, however, that the purpose of MHUEMDA is to "protect the dealer, who is often in a weaker bargaining position than the [manufacturer] who inherently has superior economic power in the negotiation of dealerships." *Astleford Equip. Co.,* 632 N.W.2d at 191 (agreeing with purpose stated in *Midwest Great Dane Trailers, Inc. v. Great Dane Partnership,* 977 F.Supp. 1386, 1392 (D.Minn.1997)). The Court therefore interprets the statute in light of this expressed purpose.

Defendants cite the following definition section of MHUEMDA:

> Subd. 3. Heavy and utility equipment manufacturer. "Heavy and utility equipment manufacturer," "heavy equipment manufacturer," or "equipment manufacturer" means a person, partnership, corporation, association, or other form of business enterprise engaged in the manufacturing, assembly, or wholesale distribution of heavy and utility equipment as defined in subdivision 2. The term also includes a successor in interest of the heavy and utility equipment manufacturer, including a purchaser of assets or stock, a surviving corporation resulting from a merger or liquidation, a receiver or assignee, or a trustee of the original equipment manufacturer.

Minn.Stat. § 325E.068 (emphasis added).

The section clearly contemplates an expansive definition of "heavy and utility equipment" dealers, and includes "successors in interest" in that definition. A "successor in interest" is typically defined as one who follows another in ownership or control of property. *Black's Law Dictionary* 1431-32 (6th ed.1990); *see also Fletcher*

*Cyclopedia of the Law of Private Corporations,* § 7203. Mere assignees are not typically considered successors in interest, *see Black's Law Dictionary* 1431-32 (6th ed.1990); MHUEMDA, however, expressly includes assignees and receivers.

Although MHUEMDA expansively defines the term "successor in interest," the Court is not persuaded that MHUEMDA was intended to transform every financer of equipment manufacturers into "successors in interest" for every purpose. Such a reading would inhibit necessary financing for manufacturers, and would extend liability well beyond general principles of corporate liability. If the legislature had intended such a dramatic effect, it would have said so more plainly, perhaps by explicitly including the term "secured creditor" in the definition of successor in interest.

***4** However, even if "successor in interest" includes plaintiffs for some purposes, it does not necessarily follow that all aspects of the parties' relationships are encompassed by the arbitration clause. The aspect of the parties' relationship in dispute here is the independent financing arrangement between plaintiff and defendants. **Bering** certainly influenced that relationship, but was not a party to the financing agreements. The dispute here is derivative of the independent relationship between plaintiff and defendants; it is not derivative of the relationship between **Bering** and defendants. The Court notes that defendants indicate that their likely counterclaims are, in fact, derivative of the **Bering**-defendants relationship. It is not appropriate, however, for the Court to order arbitration based on "likely" or anticipated counterclaims. Instead, the Court must base its decision on the record before it. In sum, the current dispute is not subject to the arbitration clause contained in the contract between **Bering** and defendants.

III. Alternate ground for successor liability

If plaintiff is not a successor in interest, there is no basis on which to compel arbitration. The Uniform Commercial Code provides that "[t]he existence of a security relationship ... without more, does not subject a secured party to liability in contract ... for the debtor's acts or omissions." *See* Minn.Stat. § 336.9-402 (adopting Article 9 of the Uniform Commercial Code). In limited circumstances, secured creditors will be held to have assumed the liabilities of the predecessor corporation. Those exceptions include instances in which (1) the successor has agreed to assume liabilities, (2) the transaction is a de facto merger; (3) the successor is a "mere continuation" of the predecessor, or (4) the transaction was fraudulent. *United States v. Mexico Feed and Seed Co.,* 980 F.2d 478, 487 (8th Cir.1992). None of those exceptions apply in this case.

Defendants' expressed concern that manufacturers might attempt to avoid the strictures of MHUEMDA by simply transferring assets to third party corporations. The Court acknowledges the concern, but notes that there is no allegation in this case that such avoidance was attempted. Rather, the record and arguments reveal that plaintiff was a legitimate financer of **Bering,** and had a relationship with defendants independent from its relationship with **Bering.**

The Court might have reached a different result had **Bering,** rather than plaintiff, entered the financing agreement and if it was **Bering,** rather than plaintiff, seeking to enforce the financing agreement. In *Neal v. Hardee's Food Sys., Inc.,* 918 F.2d 34 (5th Cir.1990), the defendant franchise sought to compel arbitration pursuant to an arbitration clause in the parties' licensing agreement. The franchisee's claims, however, were brought pursuant to the parties' purchase agreement, which did not contain an arbitration clause. *Id.* at 36. Nonetheless, the Court ruled that the arbitration clause controlled, reasoning that "separate agreements executed contemporaneously by the same parties, for the same purposes, and as part of the same transaction, are to be construed together." *Id.* at 37. Those criteria, however, are not met here.

IV. Conclusion

***5** The Court finds that plaintiffs are not parties to the arbitration agreement for the purposes of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

resolving the dispute based on the financing agreement. The Court does, however, note that the language in the arbitration agreement is quite broad, as is MHUEMDA's definition of successor in interest. The Court reserves the question of whether the defendants' anticipated counterclaims are subject to the arbitration agreement.

ORDER

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, IT IS HEREBY ORDERED that defendants' motions to dismiss or stay [Civ. Nos. 02-2924 and 02-2925] are DENIED.

Not Reported in F.Supp.2d, 2003 WL 21005290 (D.Minn.)

**Motions, Pleadings and Filings (Back to top)**

- 0:02CV02925 (Docket) (Aug. 14, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
**FORD MOTOR CREDIT COMPANY**, Plaintiff,
v.
MIDWEST DIESEL SERVICE, INC., a Minnesota corporation, Gerald Reiter, and Karen Reiter, Defendants.
**FORD MOTOR CREDIT COMPANY**, Plaintiff,
v.
U.S. LEASING & SALES, INC., a Minnesota corporation, and Loren Backlund, Defendants.
**No. Civ.02-2924(JRT/FLN), Civ.02-2925(JRT/FLN).**

Nov. 26, 2003.

Thomas L. Muss, Dorsey & Whitney, Minneapolis, MN, for plaintiff.

Ronald K. Gardner, Jr., and Sarah A. Johnston, Dady & Gardner, Minneapolis, MN, for defendants.

MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS OR STAY PLAINTIFF'S CLAIMS PENDING ARBITRATION OF DEFENDANTS' COUNTERCLAIMS AND PLAINTIFF'S MOTION TO DISMISS

TUNHEIM, J.

***1** Plaintiff Ford Motor Credit Company ("FMCC") brings this action against defendants Midwest Diesel Service, Inc., Gerald and Karen Reiter, U.S. Leasing and Sales, Inc., and Loren Backlund (collectively, "defendants") to collect payments allegedly due on financing agreements between plaintiff and defendants. This is the second time that the Court has addressed this issue. Defendants brought motions for an order to dismiss or stay the action pending arbitration of the claims, which this Court denied on April 16, 2003. Defendants, having subsequently brought counterclaims against plaintiff, again move for a dismissal or stay of the action, this time pending arbitration of the counterclaims. Plaintiff moves for dismissal of the counterclaims. The Court denies defendants' motions and grants in part plaintiff's motion.

BACKGROUND

Defendants were authorized dealers of **Bering** Truck Corporation-branded commercial trucks, parts, and services. [FN1] Defendants and **Bering** Truck Corporation ("**Bering**") entered into Dealer Agreements detailing their relationship, which contain very broad arbitration clauses. Separately, although possibly at the suggestion of **Bering**, plaintiff and defendants entered into financing agreements under which plaintiff provided defendants the funds to maintain necessary inventory levels at the dealerships. In a verbal agreement, **Bering** agreed to pay defendants' interest and insurance costs under the financing agreements to plaintiff. [FN2] Following **Bering's** dissolution, plaintiff filed a lawsuit against defendants to collect payment on the financing agreements.

FN1. As the Court has previously discussed the facts leading to this action, it will not do so in depth here. The Court incorporates the factual discussion contained in its Order and Memorandum of April 16, 2003.

FN2. **Bering** made a number of payments directly to plaintiff on defendants' behalf,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

but apparently stopped making payments when **Bering** collapsed.

Defendants first brought a motion to dismiss or stay this action pending arbitration asserting that plaintiff is a successor in interest to **Bering** and is therefore subject to the arbitration agreement between defendants and **Bering.** The Court denied defendants' motion, reasoning that the financing agreements were entered into independently by plaintiff and defendants and thus were not covered by the arbitration agreement between defendants and **Bering.** The Court also found that, for purposes of plaintiff's claims, plaintiff was not a successor in interest to **Bering.** The Court reserved the question of whether, for purposes of any counterclaims brought by defendants, plaintiff might be a successor in interest to **Bering** and subject to the arbitration agreement between defendants and **Bering.**

Defendants have now brought counterclaims against plaintiff. [FN3] Each of the counterclaims, with the exception of part of Count 1 (breach of contract and covenant of good faith and fair dealing) and part of Count 5 (tortious interference with contractual relations and prospective economic advantage), arises out of the dealer agreements between **Bering** and defendants and is brought against plaintiff as a successor in interest to **Bering.** [FN4] The question before the Court therefore remains whether plaintiff can be considered a successor in interest to **Bering** that is subject to the arbitration clauses in the Dealer Agreements.

FN3. Defendants allege eight claims: breach of contract and covenant of good faith and fair dealing; violation of the Minnesota Heavy and Utility Equipment and Manufacturers and Dealers Act ("MHUEMDA"); violation of the Minnesota Motor Vehicles Act; violation of the Virginia Equipment Dealers Protection Act (VEDPA); tortious interference with contractual relations and prospective economic advantage; unjust enrichment; estoppel; and recoupment.

FN4. The parts of Counts 1 and 5 brought against plaintiff directly are discussed in Part II.

ANALYSIS

I. Defendants' Motion to Dismiss or Stay Plaintiff's Claims Pending Arbitration of Defendants' Counterclaims

***2** In its Order of April 16, 2003 the Court determined that the Minnesota Heavy and Utility Equipment and Manufacturers and Dealers Act ("MHUEMDA"), Minn.Stat. §§ 325E.068 *et seq.,* governs the relationship between **Bering** and defendants. [FN5] Although a mere assignee is not ordinarily considered a successor in interest, *see Black's Law Dictionary* 1431-32 (6th ed.1990), the MHUEMDA expressly includes "a receiver or assignee." Minn.Stat. § 325E.068. [FN6] The statute does not explicitly define "assignee." As this Court noted, the MHUEMDA is intended to protect dealers. Defendants continue to argue that, in light of this purpose, the term "assignee" should be understood broadly as, for example, "one to whom property rights or powers are transferred by another." *Black's Law Dictionary* 114 (6th ed.1990). Such a definition would include a secured creditor who, as was the case with FMCC and **Bering,** takes possession of all of the assets of its debtor. For the reasons expressed in its previous order and those below, the Court is not persuaded that the Minnesota legislature intended the term to be read so broadly.

FN5. Defendants assert that under the dealer agreements the Court should apply Virginia law to some of defendants' counterclaims and Minnesota law to others. Without deciding which law would be appropriate, the Court notes that defendants rely on substantially similar language in both the MHUEMDA and the Virginia equivalent, the VEDPA. Because the Court concludes that the outcome would be the same under either state's statute, the Court will proceed with its analysis under Minnesota law.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN6. Defendants cite the following definition section of MHUEMDA:
Subd. 3. Heavy and utility equipment manufacturer. "Heavy and utility equipment manufacturer," "heavy equipment manufacturer," or "equipment manufacturer" means a person, partnership, corporation, association, or other form of business enterprise engaged in the manufacturing, assembly, or wholesale distribution of heavy and utility equipment as defined in subdivision 2. The term also includes a successor in interest of the heavy and utility equipment manufacturer, including a purchaser of assets or stock, a surviving corporation resulting from a merger or liquidation, a receiver or assignee, or a trustee of the original equipment manufacturer. Minn.Stat. § 325E.068 (emphasis added).

A. April 16, 2003 Order [FN7]

FN7. The Court incorporates the analysis contained in its Order and Memorandum of April 16, 2003.

As the Court noted in its previous Order, Minnesota has adopted Article 9 of the Uniform Commercial Code, which provides that a secured creditor is liable for its debtor's acts only in limited circumstances. Minn.Stat. § 336.9-402. The Court also noted that Minnesota follows the traditional definition of corporate successor in interest liability, which holds that where one company transfers all of its assets to another company, the transferee is not liable for the obligations of the transferor except under certain circumstances. *See Niccum v. Hydra Tool Corp.,* 438 N.W.2d 96, 98 (Minn.1989). The *Niccum* court found that the Minnesota legislature explicitly intended to "limit any further extension of successor liability beyond the traditional exceptions." *Id.* at 99 (citing Minn.Stat. § 302A.661 (1988)). The Court found that none of the circumstances specified in either the UCC or in common law exist in the instant case. [FN8]

FN8. In their Memorandum In Support of Defendants' Motion to Dismiss or Stay Plaintiff's Claims Pending Arbitration of Defendants' Counterclaims, defendants assert a number of additional facts that, they allege, demonstrate that plaintiff continued **Bering's** business operations. The Court finds that these assertions do not demonstrate that plaintiff effectively continued **Bering's** business, and are actions consistent with plaintiff's role as **Bering's** principal creditor and financing agency interested in pursuing and protecting its business.

B. Statutory interpretation

Under Minnesota law, the Court is to assume that the legislature intended statutes to be effective and certain, Minn.Stat. § 645.17(2) (1994), and to construe statutes in such a way as to, where possible, harmonize potentially conflicting laws. Minn.Stat. § 645.26, subd. 1 (1994). In determining the legislature's intent, Minnesota courts have also determined that whenever possible, a court should avoid interpreting a statute so as to render a word, phrase, or sentence superfluous or insignificant. *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (1999). Further, where the legislature has grouped particular terms together, it only makes sense that they should be construed in relation to each other. *See, e.g., Brookdale Pontiac--GMC v. Federated Ins.,* 630 N.W.2d 5, 9 (Minn.Ct.App.2001) (review denied).

***3** To interpret the MHUEMDA as defendants urge would create conflict between the MHUEMDA and Minnesota's other well-established law. There is no indication that the Minnesota legislature intended to create such a conflict in this context. In the MHUEMDA, a "purchaser of assets or stock" or "a surviving corporation resulting from a merger or liquidation" are listed along with "receiver or assignee" as valid successors in interest. *See* note 7, *supra.* Either of these might, in the broadest sense of the word, also be considered assignees. Thus, to interpret assignee in such a broad manner would render the previous terms superfluous. Further, "assignee" is grouped

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

with the term "receiver." A receiver is "a disinterested person appointed ... for the protection or collection of property that is the subject of diverse claims," such as in a bankruptcy proceeding. *Black's Law Dictionary* 1275 (6th ed.1990). An "assignment of assets" is a state law substitute for federal bankruptcy proceedings. *Id.* at 115. The grouping of the two terms together seems to indicate a more limited definition than that suggested by defendants, one likely related to bankruptcy or some other situation involving disputed ownership of assets.

The Court finds that the Minnesota legislature did not intend the defendants' broad reading of the term "assignee" as that term is used in the MHUEMDA. The Court also finds that a secured creditor does not fit into any of the traditional definitions of successor in interest. Therefore, plaintiff cannot be considered a successor in interest to **Bering.** As such, plaintiff is not a party to the Dealer Agreements between defendants and **Bering** and is not subject to the arbitration clauses or any other clauses. As established previously, the Court cannot compel arbitration where no valid arbitration agreement exists between the parties.

II. Plaintiff's Motion to Dismiss

In ruling on a motion to dismiss, the Court must accept the allegations contained in the complaint as true and draw all reasonable inferences from the complaint in favor of the nonmoving party. *Young v. City of St. Charles,* 244 F.3d 623, 627 (8th Cir.2001). Dismissal for failure to state a claim upon which relief can be granted is not appropriate unless the nonmoving party would be able to prove no set of facts entitling that party to relief. *Id.*

Because the Court has determined that plaintiff cannot be considered a successor in interest to **Bering,** defendants cannot prove any set of facts under which they would be entitled to relief from plaintiff on those counterclaims brought against plaintiff as successor in interest to **Bering.** Defendants also allege, however, that plaintiff itself breached the financing agreements and the implied covenants of good faith and fair dealing and tortiously interfered with contractual relations and prospective economic advantage by "intentionally and unreasonably" delaying removal and resale of vehicles from defendants' dealerships. Defendants assert that plaintiff's delay increased the interest and insurance charges that plaintiff now seeks to collect from defendants and undercut defendants' ability to get the highest possible price for the vehicles.

***4** Any duty plaintiff may have had to act in a timely fashion arises from the contractual relationship between plaintiff and defendants established in the Financing Agreements. [FN9] With respect to these claims plaintiff has not met its burden of demonstrating that there is no set of facts under which defendants could succeed. Dismissal is therefore inappropriate as to those portions of counterclaims 1 and 5 brought against plaintiff directly.

FN9. As the Court found previously, this relationship is not subject to the arbitration clauses of the Dealer Agreements between defendants and **Bering,** and these counterclaims therefore cannot be a basis to stay or dismiss the action pending arbitration.

ORDER

Based on the foregoing, all the records, files, and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendants' Motion to Dismiss or Stay Plaintiff's Claims Pending Arbitration of Defendants' Counterclaims [Civil No. 02-2924 Docket No. 28; Civil No. 02-2925 Docket No. 27] is DENIED;

2. Plaintiff's Motion to Dismiss Defendants' Counterclaims [Civil No. 02- 2924 Docket No. 35; Civil No. 02-2925 Docket No. 34] is GRANTED in part and DENIED in part. The motion is GRANTED as to counterclaims 2, 3, 4, 6, 7, 8 and those portions of counterclaims 1 and 5 brought against plaintiff as successor in interest to **Bering.** The motion is DENIED as to those portions of counterclaims 1 and 5 brought against plaintiff directly. Defendants' Counterclaims 2, 3, 4, 6, 7,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and 8 are DISMISSED WITH PREJUDICE.

Not Reported in F.Supp.2d, 2003 WL 22901837 (D.Minn.)

**Motions, Pleadings and Filings (Back to top)**

• 0:02CV02925 (Docket) (Aug. 14, 2002)

• 0:02CV02924 (Docket) (Aug. 14, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.