35

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Civil No. 02-2925 (JRT/FLN)**

Ford Motor Credit Company, a
Delaware corporation,

Plaintiff,

**AFFIDAVIT OF HARRY SAXTON**

v.

U.S. Leasing & Sales, Inc., a Minnesota
corporation, and Loren Backlund,

Defendants.

**Civil No. 02-2924 (JRT/FLN)**

Ford Motor Credit Company, a
Delaware corporation,

Plaintiff,

v.

Midwest Diesel Service, Inc., a
Minnesota corporation, Gerald
Reiter, and Karen Reiter,

Defendants.

STATE OF MICHIGAN )
)ss
COUNTY OF WAYNE )

HARRY SAXTON, having been duly sworn on oath, deposes and states as follows:

1. From May 1997 to May 2002 I was a Regional Manager, Commercial Lending Services, Ford Motor Credit Company ("Ford Credit"). During my employment at Ford Credit, I was the primary individual responsible for Ford Credit's relationship with Bering Truck

Corporation ("Bering"). I have personal knowledge of Ford Credit's financing arrangements and relationship with Bering. If asked, I could and would testify truthfully as to the matters set forth below.

2. Ford Credit provided financing directly to Bering in exchange for a secured interest in Bering's property. At the outset of Ford Credit's lending relationship with Bering, the parties discussed possible financing options for authorized Bering dealers. These discussions focused upon the number of vehicles for which Ford Credit would agree to provide financing based an a dollar rate of travel for inventory turn, as well as required capitalization, overall financial strength and likelihood of success as a Bering dealer. To my knowledge, at no time did Ford Credit agree to any "special" financing options, such as an interest-free floor plan period. Although Ford Credit was aware that Bering later offered its dealers such an arrangement, Ford Credit did not participate in it. At all times, I held the dealers with whom Ford Credit had direct lending arrangements ultimately responsible for all interest payments.

3. After Bering defaulted on its lending arrangements, Ford Credit seized possession of all secured collateral and began attempting to sell it for a reasonable amount. Ford Credit attempted to sell some of the seized vehicles through existing Bering dealers, believing this to be the most commercially viable method of maximizing the sale price of a vehicle.

4. In or about June 2001, Ford Credit hired Richard Frisbie to assist with the sale of seized collateral. At no time prior to his hiring in June 2001 did Frisbie act as a representative, direct or indirect, for Ford Credit.

5. In or about July 2001, Hyundai sponsored a Bering dealer conference in Washington D.C. I attended this conference on behalf of Ford Credit. Ford Credit did not sponsor or organize the conference. During the conference, I advised the dealers in attendance

that they were responsible to Ford Credit for all amounts owing under their respective financing agreements, including any outstanding interest payments. I never advised any dealer that it would not be held accountable for interest and insurance charges owed to Ford Credit.

6. To my knowledge, Ford Credit did not take over Bering's role or business at any time. To my knowledge, Ford Credit, at all times, sought to sell collateral pursuant to its rights as Bering's secured creditor. Ford Credit also sought to enforce its rights under financing agreements with various Bering dealers. For example, Ford Credit did not permit dealers to sell a vehicle at a discounted amount without assurance that the dealer could pay Ford Credit for the entire amount financed for that vehicle.

FURTHER AFFIANT SAYETH NOT.

Harry Saxton

Subscribed and sworn to before me

this 18 day of June, 2002.

Notary Public

ROBERT KEITH WOZNIAK
Notary Public, Wayne County, MI
Acting in [illegible] Co., MI
My Commission Expires 10/28/2005