UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Ford Motor Credit Company | ) | |
| | ) | |
| vs | ) | C.A. NO. 05-137S |
| | ) | |
| Rhode Island Mack Sales & Service, Inc. | ) | |

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and LR CV 56, plaintiff Ford Motor Credit Company hereby moves for entry of summary judgment in its claims against the defendant, Rhode Island Mack Sales & Service, Inc. on the ground that, on the basis of undisputed facts, plaintiff is entitled to judgment as a matter of law. Ford Credit bases its motion upon the accompanying statement of undisputed facts, the affidavit of Sara O'Brien and the affidavit of James Byrnes, as well as the accompanying memorandum of law.

FORD MOTOR CREDIT COMPANY
By its attorneys,

Thomas W. Lyons, R.I. Bar 2946
Strauss, Factor, Laing & Lyons
222 Richmond Street, Suite 208
Providence, R.I. 02903
Tel. (401)456-0700
Fax (401)421-4730
tlyons@straussfactor.com

DATED: May 2, 2006

**CERTIFICATION**

I hereby certify that on this 2nd day of May, 2006, a copy of the within was sent to James H. Reilly, Esq., Kelly, Kelleher, Reilly & Simpson, 146 Westminster Street, Suite 500, Providence, RI 02903 by regular mail, postage prepaid.

Christine Abrams

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Ford Motor Credit Company | ) | |
| | ) | |
| vs. | ) | C.A. NO. 05-137S |
| | ) | |
| Rhode Island Mack Sales & Service, Inc. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to F.R.C.P. 56, plaintiff Ford Motor Credit Company ("FMCC") moves for summary judgment. In this case, no material facts are disputed and FMCC is entitled to judgment as a matter of law.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See F.R.C.P. 56(c). The party opposing the motion for summary judgment must show that a genuine and material and triable issue exists.

See, Newport Plaza Associates, L.P. v. Durfee Attleboro Bank, 985 F.2d 640, 642 (1st Cir., 1993) quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) and Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990).

A genuine issue exists where a reasonable jury could find in favor of the nonmoving party. See, Newport Plaza Associates, L.P. quoting United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir., 1992). A material fact is one that may change the outcome of the litigation. See Newport Plaza Associates, L.P. quoting Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir., 1992). The court will view all facts in the light

most favorable to the nonmoving party. See, Tanya Creations v. Talbots, Inc., 356 F.Supp.2d 97, 98 (D. R. I., 2005). The nonmoving party cannot rest on the pleadings but must demonstrate specific facts showing that there is a genuine issue for trial. See, id.

**II. NO MATERIAL FACTS ARE IN DISPUTE**

This case arises from a default for the payment of eleven vehicles. FMCC commenced suit seeking the deficiency balance after the repossession and sale of the vehicles in question. Rhode Island Mack was a commercial vehicle dealership selling Bering trucks among other vehicles. Bering was the national distributor for Hyundai commercial vehicles. FMCC engages in the business of automotive financing. FMCC and Bering are separate, distinct entities. On April 21, 1999, FMCC and Rhode Island Mack entered into an agreement whereby FMCC would provide wholesale vehicle financing to Rhode Island Mack ("the floor plan"). FMCC agreed to finance Rhode Island Mack's vehicle inventory in exchange for repayment by the defendant. Generally, Bering would notify FMCC electronically of a purchase by Rhode Island Mack. FMCC would issue a check to Bering for the cost of the vehicle and add the vehicle to Rhode Island Mack's floor plan. The payment for the vehicle would be noted in the activity reports provided to Rhode Island Mack.

The contract required FMCC to provide activity reports to the defendant. Specifically, the contract states the following:

> "From time to time Ford Credit shall furnish statements to Dealer of Advances made by Ford Credit hereunder. Dealer shall review the same promptly upon receipt and advise Ford Credit in writing of any discrepancy therein. If Dealer shall fail to advise Ford Credit of any discrepancy in any such statement within ten calendar days following the receipt thereof by Dealer, such statement shall be deemed to be conclusive evidence of Advances made by Ford Credit hereunder unless Dealer or Ford Credit establishes by a preponderance of evidence that such Advances were not made or were made in different amounts than as set forth in such statement". See Automotive Wholesale Plan Application For Wholesale Financing and Security Agreement, Paragraph 1. Advances by Ford Credit.

FMCC provided the activity reports. Defendant was obligated to review the reports and notify FMCC concerning discrepancies. With respect to the eleven vehicles that are the subject of this lawsuit, Rhode Island Mack did not notify FMCC within ten days of receipt as required under the terms of the contract that it disputed the purchase of any of the vehicles.

FMCC provided financing to both Bering and Rhode Island Mack and had security agreements with them both. In March 2001, Rhode Island Mack terminated its dealership agreement with Bering. In June 2001, Bering ceased doing business as a distributor and assigned its secured assets to FMCC. When FMCC demanded repayment for the eleven vehicles in question that had been included on activity reports to Rhode Island Mack, Rhode Island Mack claimed that four of the eleven vehicles were on consignment from Bering.

Rhode Island Mack has not provided any scintilla of evidence showing that four of the vehicles were on consignment from Bering. There are no material facts in dispute.

The parties entered into a contract. The Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement signed by Defendant on April 21, 1999 states the following:

> "In connection with the purchase of any such contract and/or other extension of credit, Ford Credit may pay to any manufacturer, distributor, or other seller of the Merchandise the invoice or contract amount therefore and be fully protected in relying in good faith upon any invoice, contract or other advice from such manufacturer, distributor, or seller that the Merchandise described therein has been ordered or shipped to Dealer and that the amount therefore is correctly stated." See Automotive Wholesale Plan Application For Wholesale Financing and Security Agreement, Paragraph 1. Advances by Ford Credit.

FMCC financed the vehicles in question. Under the contract terms, FMCC was to be fully protected by relying on the invoices that it was provided. Furthermore, FMCC sent activity reports to Rhode Island Mack. Rhode Island Mack never disputed the inclusion of four of the eleven vehicles until after Bering ceased operations and demand for payment was made upon

the defendant. Rhode Island Mack refused to pay for any of the vehicles. The vehicles were subsequently repossessed. Upon the sale of the vehicles, a deficiency balance remains due.

Plaintiff's Statement of Undisputed Facts demonstrates that no genuine and material facts are in dispute. There was a contract between the parties. Ford provided credit to the defendant. Bering ceased operations. As a creditor of Bering, FMCC was assigned Bering's secured assets. FMCC demanded payment from Rhode Island Mack for eleven vehicles. FMCC later repossessed the vehicles and conducted sales. A deficiency balance remains. Even if the four vehicles in question were on consignment to Rhode Island Mack, FMCC is entitled to payment for those vehicles as the vehicles were included on the activity reports and never disputed as required under the terms of the contract. Under the terms of the agreement between the parties, Rhode Island Mack is liable to FMCC for all eleven vehicles included on the activity reports. As demonstrated by the Affidavit of James Byrne, the vehicles were disposed of in a commercially reasonable manner for the best possible price. Therefore, FMCC is entitled to judgment for the deficiency balance claimed.

## III. PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

### A. THE DEFENDANT FAILED TO NOTIFY PLAINTIFF OF DISCREPANCIES IN THE ACTIVITY REPORTS AS REQUIRED

Under the terms of the contract, Plaintiff is entitled to judgment as a matter of law. Rhode Island Mack has not provided proof of any such alleged consignment arrangement with Bering. Even if Rhode Island Mack believed that the four vehicles were on consignment, Rhode Island Mack failed to dispute discrepancies in the activity reports within ten days as required under the terms of the contract. Hence, Rhode Island Mack's failure to dispute the reports constitutes an admissions as to the accuracy of the reports under the terms of the contract.

## B. FMCC IS NOT SUBJECT TO DEFENSES THAT RHODE ISLAND MACK WOULD HAVE AGAINST BERING

It appears Rhode Island Mack argues that FMCC is a successor-in-interest to Bering and subject to whatever defenses that Rhode Island Mack would have against Bering.[1]

This is an argument that the United States District Court for Minnesota has rejected specifically on two occasions: See, Ford Motor Credit Company v. U.S. Leasing & Sales, Inc., 2003 WL21005290 (D.Minn. April 15, 2003); Ford Motor Credit Company v. Midwest Diesel Service, Inc., 2003 WL 22901837 (D. Minn. Nov. 26, 2003).[2] It is generally the law in Rhode Island and elsewhere that a secured party is not the successor-in-interest to the debtor's obligations. "The existence of a security interest, agricultural lien, or authority given to a debtor to dispose of or use collateral, without more, does not subject a secured party to liability in contract or tort for the debtor's acts or omissions." R.I.G.L. §6A-9-402. Here, FMCC is asserting its rights under its financing agreements with Rhode Island Mack. Therefore, Rhode Island Mack cannot defend itself based on its agreement with Bering.

Under these circumstances, it is well settled that a secured party does not become bound to the debtor's obligations, as an assignee or otherwise. See, AG Services of America, Inc. v. Debruce Grain, Inc., 19 P.3d 188 (Kan.App. 2001) ("[w]e fail to see how AG Services is transferred from a secured party into an assignee of an account debtor"); Spielman v. Acme National Sales Co., 572 N.Y.S.2d 400, 402 (App.Div. 1991) ("a secured creditor should not be bound to contracts entered into between the debtor and third parties, notwithstanding the secured creditor's possession of the debtor's assets as collateral after default"); see, also,

---

[1] Notably, Rhode Island Mack did not allege in its answer that FMCC was a successor-in-interest to Bering and it has arguably waived this defense. See, F.R.C.P. 8(c) ("... a party shall set forth affirmatively ... any other matter constituting an avoidance or affirmative defense.").

[2] Moreover, the two Bering dealers involved in the Minnesota cases had "stronger" arguments than Rhode Island Mack. They were still Bering dealers when Bering ceased doing business. By contrast, Rhode Island Mack terminated its dealership agreement with Bering in March 2001, three months before Bering ceased doing business. Thus, FMCC's relationship with Rhode Island Mack in June 2001 is irrelevant.

Campanella v. Commerce Exchange Bank, 745 N.E.2d 1087, 1097 (Ohio App. 8 Dist. 2000) (noting that under equivalent Ohio commercial statute, a secured creditor is not liable for any contract obligations between debtor and a third party); Lambros v. Aetna Casualty and Surety Co., 468 F.Supp. 624, 628 (S.D.N.Y. 1979) (holding the secured creditor's involvement in the financial affairs of this debtor neither merges the identity of the companies nor binds the creditor to the contractual obligations of the debtor); First Nat. Bank & Tr. Co. of Enid v. Holston, 559 P.2d 440, 444 (Okla. 1977) ("The secured creditor is not bound to honor the debtor's contracts with third parties"); Brandes v. Pettibone, 360 N.Y.S. 814, 818 (N.Y.Sup.Ct. 1974) (party holding a security interest cannot be obligated by debtor's contracts).

C. FMCC IS NOT A CONTINUATION OF THE BERING CORPORATION.

Furthermore, FMCC is not a continuation of the Bering Corporation and therefore is not liable as a successor corporation either. The general rule is that a corporation may acquire the assets of another corporation without assuming the acquired corporation's debts or obligations. See, Fraoli v. Lemke, 328 F. Supp. 2d 250 (D.R.I. 2004). The exceptions are when:

1. The acquiring corporation expressly assumes existing debts or obligations.
2. There is a defacto merger.
3. The acquisition involves a transfer of assets to defraud creditors; or
4. The acquiring corporation is a "mere continuation" of the transfer corporation.

A transfer of secured assets to the secured party is not a fraudulent transfer unless the objecting party shows that the value of the transferred assets exceeds the value of the security interest. See, Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc., 124 F.3d 252 (1st Cir. 1997). To determine whether one corporation is a continuation of another, five factors are analyzed in Rhode Island. See, Ed Peters Jewelry Co. v. C&J Jewelry Co., 215 F.3d 182 (1st Cir. 2000). The five factors are stated as follows:

1. There is a transfer of corporate assets.

2. There is less than adequate consideration.
3. The new company continues the business of the transferor.
4. Both companies have at least one common officer or director who is instrumental in the transfer; and
5. The transfer renders the transferor incapable of paying its creditors because it is dissolved either in fact or by law.

FMCC and Bering have been completely distinct entities with different officers, directors, and shareholders. The mere continuation of some business operations does not constitute successor corporate liability. FMCC merely took actions to maximize its ability to sell the repossessed collateral at the highest possible rate.

To emphasize the distinction between FMCC and Bering, FMCC notes that in 2001, Bering sued Hyundai and Daimler-Chrysler alleging they had conspired to drive Bering out of business. See, Bering Truck Dist., et al. v. Hyundai Motor Co., et al., 5:01-cv-00056-jct (W.D. Virginia 2001). The case went into arbitration and in a detailed 67 page decision an international arbitration panel upheld many of Bering's claims and awarded it over $6 million in damages including interest. (excerpt attached at A). Most pertinent to this motion, the United States District Court for the Western District of Virginia subsequently entered an order in January 2006 to implement the distribution of the award proceeds (Attached at B). The order recognized that FMCC and Bering had competing claims to part of the proceeds. In other words, FMCC is not the successor-in-interest to Bering.

## D. THE VEHICLES WERE DISPOSED OF IN A COMMERCIALLY REASONABLE MANNER

Hyundai is located in Korea. Bering was the national distributor for Hyundai's commercial vehicles. The Hyundai trucks were not in the market for a significant period of time when Bering ceased operations. Once Bering ceased operations, there was no significant demand for the vehicles amid concerns for service and parts availability.

The Affidavit of James Byrne demonstrates that the vehicles were disposed of in a commercially reasonable manner under the circumstances. Repairs were needed to make the vehicles ready for market. In addition, the vehicles were not purchased at auction. Thus, Mr. Byrne using his many years of experience in the truck sales and financing industry used his many contacts and sales abilities to privately sell the vehicles. Defendant has not specified any acts of the Plaintiff that would classify the sales as commercially unreasonable.[3]

Plaintiff is entitled to judgment as a matter of law. FMCC is not a successor in interest or continuation of Bering nor otherwise liable to Defendant. Even if the four vehicles that Defendant claims were on consignment by Bering, FMCC was not notified as required under the contract of any discrepancies in the activity reports. Thus, Rhode Island Mack waived any claim that it did not purchase the vehicles or was not otherwise obligated to FMCC for the vehicles. The vehicles were disposed of in a commercially reasonable manner. Therefore, Plaintiff is entitled to judgment as a matter of law.

## CONCLUSION

Summary judgment is appropriate when the facts viewed most favorably to the nonmoving party demonstrate no material facts are in dispute and that the moving party is entitled to judgment as a matter of law. Here, no material facts are in dispute. Even if any of the vehicles were on consignment, FMCC was entitled to notification within ten business days from Rhode Island Mack concerning any discrepancies. Rhode Island Mack has not produced any proof of such consignment or any notification to FMCC of any errors in the reports. Therefore, Defendant waived any dispute under the terms of the agreement between the parties.

---

[3] Notably, Rhode Island Mack was one of the entities that would have received notice of Byrne's sales efforts. Either before or after FMCC repossessed the vehicles, Rhode Island Mack could have taken steps to reduce its exposure either by selling the vehicles while still in its possession or by purchasing them from FMCC and reselling them.

Plaintiff had the right to repossess the vehicles and hold the defendant liable for a deficiency balance. The vehicles were disposed of in a commercially reasonable manner particularly given the fact that Bering, the national distributor ceased operations. Plaintiff is neither a successor in interest to Bering nor a continuation of Bering. Thus, Rhode Island Mack cannot assert defenses or claims that it has with Bering against FMCC. Accordingly, FMCC requests that judgment enter against Rhode Island Mack in the amount of $391,376.27 plus interest and costs.

FORD MOTOR CREDIT COMPANY
By its attorneys,

Thomas W. Lyons, R.I. Bar 2946
Strauss, Factor, Laing & Lyons
222 Richmond Street, Suite 208
Providence, R.I. 02903
Tel. (401)456-0700
Fax (401)421-4730
tlyons@straussfactor.com

DATED: May 2, 2006

**CERTIFICATION**

I hereby certify that on this 2nd day of May, 2006, a copy of the within was sent to James H. Reilly, Esq., Kelly, Kelleher, Reilly & Simpson, 146 Westminster Street, Suite 500, Providence, RI 02903 by regular mail, postage prepaid.