UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Ford Motor Credit Company | ) | |
| | ) | |
| vs | ) | C.A. NO. 05-137S |
| | ) | |
| Rhode Island Mack Sales & Service, Inc. | ) | |

PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

1. The court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 in that the parties are diverse and plaintiff's damages exceed $75,000, exclusive of interest and costs. See *Answer of Defendant Rhode Island Mack Sales & Service, Inc.* Paragraph 1 (Admitting Allegations Set Forth in Paragraphs 1 through 5 of the Plaintiff's Complaint).

2. Ford Motor Credit Company ("FMCC") is a Delaware corporation with its principal place of business in Michigan and is registered to do business in Rhode Island. See *Answer of Defendant Rhode Island Mack Sales & Service, Inc.* Paragraph 1 (Admitting Allegations Set Forth in Paragraphs 1 through 5 of the Plaintiff's Complaint).

3. Defendant Rhode Island Mack Sales & Service ("Rhode Island Mack") is a Rhode Island corporation with its principal place of business in Rhode Island. See *Answer of Defendant Rhode Island Mack Sales & Service, Inc.* Paragraph 1 (Admitting Allegations Set Forth in Paragraphs 1 through 5 of the Plaintiff's Complaint).

4. On or about April 21, 1999, Rhode Island Mack signed a written application entitled "Automotive Wholesale Plan-Application for Wholesale Financing and Security Agreement". See *Answer of Defendant Rhode Island Mack Sales & Service, Inc.* Paragraph 1 (Admitting Allegations Set Forth in Paragraphs 1 through 5 of the Plaintiff's Complaint).

5. FMCC accepted the application and it became the written agreement between the parties for FMCC to provide financing to Rhode Island Mack to acquire vehicles such as trucks and construction equipment from manufacturers and distributors for resale to Rhode Island Mack's customers. See *Answer of Defendant Rhode Island Mack Sales & Service, Inc.* Paragraph 1 (Admitting Allegations Set Forth in Paragraphs 1 through 5 of the Plaintiff's Complaint).

6. FMCC advanced credit from time to time to Rhode Island Mack for wholesale financing of defendant's truck inventory. See *Answer of Defendant Rhode Island Mack Sales & Service, Inc.* Paragraph 2 (Admitting that Plaintiff advanced credit from time to time).

7. Bering Truck Corporation ("Bering") was a national distributor for trucks manufactured by Hyundai Motor Company, a South Korean company. See *Affidavit of Sara O'Brien*, Paragraph 2.

8. FMCC had a financing relationship with Bering. See *Affidavit of Sara O'Brien*, Paragraph 3.

9. Bering is a separate legal entity from FMCC. See *Affidavit of Sara O'Brien*, Paragraph 4. None of Bering's directors have been on directors of FMCC. (See FMCC's Answer to Interrogatories 7. Bering and FMCC have competing claims for the proceeds of an arbitration award against Hyundai Motor.

10. When FMCC and Rhode Island Mack entered into the wholesale financing agreement on or about April 21, 1999, Rhode Island Mack executed a "Power of Attorney for Wholesale" authorizing FMCC to sign promissory notes and security agreements with respect to vehicles that Rhode Island Mack purchased from Bering and financed through FMCC. See *Affidavit of Sara O'Brien*, Paragraph 5.

11. FMCC would receive electronic reports from Bering concerning the sale of a vehicle to Rhode Island Mack. FMCC would pay the purchase price to Bering and place the vehicle on Rhode Island Mack's floor plan. FMCC would execute on Rhode Island Mack's behalf a promissory note and security agreement for the vehicle. The note and agreement would be sent to Rhode Island Mack to review with the next weekly transaction report. See *Affidavit of Sara O'Brien*, Paragraph 6.

12. Transaction reports were sent to Rhode Island Mack by FMCC. The floor plan agreement entered into by the parties required that Rhode Island Mack review the reports promptly and contact FMCC within ten (10) calendar days if it disagrees with any information on the report. See *Affidavit of Sara O'Brien*, Paragraph 5.

13. Rhode Island Mack received reports reflecting the 11 vehicles on its floor plan. Rhode Island Mack did not object to the inclusion of the 11 vehicles at issue in this complaint within the ten calendar days as required by the parties' agreement. See *Affidavit of Sara O'Brien*, Paragraph 9.

14. In or around March 2001, Rhode Island Mack terminated its dealership agreement with Bering. See *Affidavit of Sara O'Brien*, Paragraph 10.

15. Bering did not take possession of the 11 vehicles in question. See *Affidavit of Sara O'Brien*, Paragraph 10.

16. Neither Bering nor Rhode Island Mack paid FMCC for the 11 vehicles for their respective floor plan amounts. See *Affidavit of Sara O'Brien*, Paragraph 10.

17. Bering ceased operations in June 2001 and assigned its secured assets to FMCC. <u>See</u> *Affidavit of Sara O'Brien*, Paragraph 12.

18. FMCC made demands for payment upon Rhode Island Mack. <u>See</u> *Affidavit of Sara O'Brien*, Paragraph 13.

19. On or about June 10, 2002, Rhode Island Mack informed FMCC that it terminated its dealership agreement with Bering and stated that it was not liable for payments on all 11 vehicles in question. <u>See</u> *Affidavit of Sara O'Brien*, Paragraph 14.

20. On or about June 10, 2002, Rhode Island Mack first claimed that it did not purchase all 11 vehicles but instead claimed that 4 of the 11 vehicles were placed at Rhode Island Mack on consignment as a favor to Bering. <u>See</u> *Affidavit of Sara O'Brien*, Paragraph 14.

21. In October 2002, FMCC took possession of the 11 vehicles. <u>See</u> *Affidavit of Sara O'Brien*, Paragraph 15.

22. FMCC contracted with James Byrne to sell the vehicles that were repossessed from Bering dealers for the highest possible price. <u>See</u> *Affidavit of Sara O'Brien*, Paragraph 15.

23. The total price of the 11 vehicles referred to in the complaint was $608,125.00. Interest and flat charges totaled $112,200.78. FMCC was owed $720,325.78.
<u>See</u> *Affidavit of Sara O'Brien*, Paragraph 16.

24. Because Bering ceased operations, the demand for the vehicles was reduced as buyers were concerned about service and parts availability. <u>See</u> *Affidavit of James Byrne,* Paragraphs 2 and 5.

25. Various methods were used to dispose of the vehicles including: at auction, website advertising, mailers, and solicitations. <u>See</u> *Affidavit of James Byrne,* Paragraphs 3 and 4.

26. Some of the vehicles sold required repairs and/or maintenance to increase their sales value. <u>See</u> *Affidavit of James Byrne,* Paragraph 7.

27. The highest price obtained for the vehicles was through the private sales of the individual vehicles to the highest bidders. <u>See</u> *Affidavit of James Byrne,* Paragraph 3.

28. The vehicles were sold to used truck dealers. <u>See</u> *Affidavit of James Byrne,* Paragraph 4.

29. The 11 vehicles were disposed of through sale for a total proceeds of $328,949.51. Expenses totaled 10,936.10. <u>See</u> *Affidavit of Sara O'Brien*, Paragraph 17.

30. FMCC is owed $391,376.27. See *Affidavit of Sara O'Brien*, Paragraph 18.

FORD MOTOR CREDIT COMPANY
By its attorneys,

Thomas W. Lyons, R.I. Bar 2946
Strauss, Factor, Laing & Lyons
222 Richmond Street, Suite 208
Providence, R.I. 02903
Tel. (401)456-0700
Fax (401)421-4730
tlyons@straussfactor.com

DATED: May 2, 2006

**CERTIFICATION**

I hereby certify that on this 2nd day of May, 2006, a copy of the within was sent to James H. Reilly, Esq., Kelly, Kelleher, Reilly & Simpson, 146 Westminster Street, Suite 500, Providence, RI 02903 by regular mail, postage prepaid.